UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOPPHOL BUATHONGSRI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ZENAS BIOPHARMA, INC. LEON O. MOULDER, JR., JENNIFER FOX, PATRICIA ALLEN, JAMES BOYLAN, PATRICK ENRIGHT, TOMAS KISELAK, HONGBU LU, PH.D, JAKE NUNN, JOHN ORLOFF, M.D., TING XIAO, MORGAN STANLEY & CO. LLC, JEFFERIES LLC, CITIGROUP GLOBAL MARKETS, INC., GUGGENHEIM SECURITIES, LLC, <br><br> Defendants. | Case No. 1:25-cv-10988 <br><br> AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br> <u>JURY TRIAL DEMANDED</u> <br><br> <u>CLASS ACTION</u> |

Lead Plaintiff Nopphol Buathongsri ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Zenas BioPharma, Inc. ("Zenas BioPharma" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1.     Plaintiff brings this securities class action on behalf of persons who purchased Zenas BioPharma common stock on or before March 12, 2025, pursuant and/or traceable to the

registration statement \(collectively, the "Registration Statement") issued in connection with Zenas BioPharma's September 2024 initial public offering (the "IPO" or "Offering") and suffered compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

2.      On or around September 13, 2024, Defendants held the IPO, offering 13,235,294 shares to the investing public at $17.00 per share.

3.      On the date of the commencement of this action, Zenas BioPharma's shares traded at $8.33 per share.

4.      Zenas BioPharma is a development stage biotechnology startup that generates essentially no revenues. At the time that it went public, the bulk of its business was dedicated to shepherding an immunotherapy called obexelimab through four separate FDA trials for different clinical indications. In its Registration Statement, Zenas stated that it was using the proceeds of its IPO primarily to complete the four ongoing clinical trials and prepare for the commercial launch of obexelimab. For the first six months of 2024, it reported total R&D expenses of $56,452,000. R&D expenses from obexelimab were $35,082,000. Its total cash flows from operations were negative $50,061,000.

5.      These numbers concealed a crucial fact – that its R&D expenses, and therefore its cash burn, increased by approximately 50% between the first and second quarter of 2024, and remained at that heightened level in the in-progress third quarter of 2024. Because Zenas had no revenues at the time of the IPO, its spending, or "burn rate" was of crucial importance to investors, and its failure to disclose the increase in R&D expenses and cash burn rate between the first and second quarter of 2024 was both affirmatively misleading to investors and a

violation of Defendants' obligations under Item 303 of Regulation S-K to disclose known trends or uncertainties.

## JURISDICTION AND VENUE

6.      The claims alleged herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District.

9.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of Zenas BioPharma securities in this District.

## PARTIES

10.      Plaintiff, as set forth in the previously filed Certification, purchased the Company's securities pursuant and/or traceable to the IPO and was damaged thereby.

11.      Defendant Zenas BioPharma purports to be a "clinical stage global biopharmaceutical company committed to being a leader in the development and commercialization of transformative immunology-based therapies for patients in need."

3

12.     The Company is incorporated in Delaware and its head office is located at 852 Winter Street, Suite 250, Waltham, Massachusetts 02451. Zenas BioPharma securities trade on the Nasdaq Global Select Market (the "NASDAQ") under the ticker symbol "ZBIO."

13.     Defendant Leon O. Moulder, Jr. ("Moulder") was at the time of the IPO the Company's Chief Executive Officer and Chairman of the Board of Directors (the "Board"), and signed or authorized the signing of the Company's Registration Statement.

14.     Defendant Jennifer Fox ("Fox") was at the time of the IPO the Company's Chief Business Officer and Chief Financial Officer, and signed or authorized the signing of the Company's Registration Statement.

15.     Defendant Patricia Allen ("Allen") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

16.     Defendant James Boylan ("Boylan") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

17.     Defendant Patrick Enright ("Enright") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

18.     Defendant Tomas Kiselak ("Kiselak") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

19.     Defendant Hongbo Lu, Ph.D. ("Lu") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

20.     Defendant Jake Nunn ("Nunn") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

21.     Defendant John Orloff, M.D. ("Orloff") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

22.     Defendant Ting Xiao ("Xiao") was at the time of the IPO a Director and signed or authorized the signing of the Company's Registration Statement.

23.     The Defendants named in ¶¶ 13-22 are sometimes referred to herein as the "Individual Defendants."

24.     Each of the Individual Defendants signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and engaged in promotions to meet with and present favorable information to potential Zenas BioPharma investors, all motivated by their own and the Company's financial interests.

25.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") is an investment banking firm that acted as a representative underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Defendant Morgan Stanley's address is 1585 Broadway, New York, NY 10036-8293.

26.     Defendant Citigroup Global Markets Inc. ("Citigroup") is an investment banking firm that acted as a representative underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Defendant Citigroup's address is 390 Greenwich St, New York, NY 10013.

27.     Defendant Jefferies LLC ("Jefferies") is an investment banking firm that acted as a representative underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Defendant Jefferies' address is 520 Madison Avenue, New York, NY 10022.

28.     Defendant Guggenheim Securities, LLC ("Guggenheim") is an investment banking firm that acted as a representative underwriter of the Company's IPO, helping to draft

and disseminate the IPO documents. Defendant Guggenheim's address is 330 Madison Avenue, New York, NY 10017.

29.    The Defendants named in ¶¶ 25-28 are sometimes referred to herein as the as the "Underwriter Defendants."

30.    Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

31.    The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared millions of dollars in fees collectively. The Underwriter Defendants arranged a roadshow prior to the IPO during which they, and representatives from Zenas BioPharma, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

32.    The Underwriter Defendants also demanded and obtained an agreement from Zenas BioPharma and the Individual Defendants that Zenas BioPharma would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

33.    Representatives of the Underwriter Defendants also assisted Zenas BioPharma and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Zenas Biopharma, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning the Company's most up-to-date operational and financial results and prospects.

34.     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Zenas BioPharma's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Zenas BioPharma securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about Zenas BioPharma would be made in the Registration Statement; and (iv) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Zenas BioPharma's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Zenas BioPharma's existing problems as detailed herein.

35.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

36.     Zenas BioPharma, the Individual Defendants, and the Underwriter Defendants are referred to collectively as "Defendants."

## THE IMPORTANCE OF "BURN RATE" TO DEVELOPMENT STAGE BIOTECHNOLOGY COMPANIES

37.     For development-stage biotechnology companies that have little or no product revenue, burn rate, the pace at which the company expends cash, is one of the most important financial metrics investors rely upon to evaluate the company's prospects and valuation. The Biotechnology Innovation Organization ("BIO"), the leading trade association representing the

biotechnology industry, explained to the SEC that investors in such companies "use … valuation metrics, such as burn rate," and that "the burn rate … is one of the most important valuation metrics for biotech companies." *Letter from BIO to the SEC, File No. S7-06-19: Amendments to the Accelerated Filer and Large Accelerated Filer Definitions* (July 29 2019), at 3, *available at* https://www.sec.gov/comments/s7-06-19/s70619-5881309-188765.pdf. In a subsequent submission to the SEC, BIO reiterated that "[t]his spectrum of cash levels and burn rates is part of the fundamental analysis of the industry, which is calculated by most biotechnology specialist investors and analysts." *Letter from BIO to the SEC, File No. S7-10-22: The Enhancement and Standardization of Climate-Related Disclosures for Investors* (June 17 2022), at 6, *available at* https://www.sec.gov/comments/s7-10-22/s71022-20132154-302645.pdf. Accordingly, burn rate is a crucial indicator of viability in the eyes of investors, and accurate disclosure of these metrics - and of any trends or uncertainties affecting them - is critically important to investors in early-stage biotechnology issuers. Therefore, it is highly material to investors if the burn rate of a company such as Zenas was materially increasing during the lead up to the IPO.

## COMPANY BACKGROUND

38.     Zenas is a clinical-stage biopharmaceutical company developing immunology-based therapies for patients with autoimmune diseases. Its lead product candidate, obexelimab, is a monoclonal antibody. Zenas is developing obexelimab as a potential treatment for several autoimmune diseases. At the time of the IPO, Zenas was pursuing clinical trials for the following four conditions: (i) immunoglobulin G4-related disease ("IgG4-RD") - Phase 3 trial; (ii) multiple sclerosis ("MS") – Phase 2 trial; (iii) systemic lupus erythematosus ("SLE") Phase 2 trial; and (iv) warm autoimmune hemolytic anemia ("wAIHA")  - ongoing Phase 2/3 trial, then  in the Phase 2 open label portion.

39.     The following represents Zenas's development pipeline as depicted in its Registration Statement.

| PROGRAM | INDICATION | PHASE 1 | PHASE 2 | PHASE 3 |
|---|---|---|---|---|
| Obexelimab[1,2]<br>CD19xFcyRIIb bifunctional mAb | IgG4-RD<br>(immunoglobulin G4-Related Disease) | Phase 3 INDIGO trial enrolling[3] | | |
| | MS<br>(Multiple Sclerosis) | Phase 2 MoonStone trial enrolling[3] | | |
| | SLE<br>(Systemic Lupus Erythematosus) | Phase 2 SunStone trial initiated[3] | | |
| | wAIHA<br>(warm Autoimmune Hemolytic Anemia) | Phase 2 SApHiAre trial enrolling | | |

[1] Zenas acquired exclusive worldwide rights to obexelimab from Xencor, Inc.
[2] Bristol Myers Squibb & Co. holds exclusive development and commercialization rights in JPN, SK, TWN, HK, SGP, AUS.
[3] Randomized versus placebo

40.     Zenas represented in its Registration Statement that it intended to use the proceeds from the IPO as follows:  (i) approximately $100.0 million to advance the clinical development of obexelimab, including to complete the Phase 3 trial for patients with IgG4-RD, the Phase 2 trial for patients with MS, the Phase 2 trial for patients with SLE, and the Phase 2 portion of the trial for patients with wAIHA and (ii) the remainder to prepare for the obexelimab commercial launch in the U.S. and Europe, if approved, including for the manufacture of commercial supply, and for working capital and other general corporate purposes.

41.     Zenas stated that it had spent $56,452,000 in the first six months of 2024 on Research and Development, and had total operating expenses of $67,280,000. Of its research and development expenses, $35,082,000 went to development of obexelimab.

42.     What Zenas failed to disclose, however, was that its spending was not uniform across the first six months of 2024. Instead, Zenas' R & D expenses dramatically increased from the first to the second quarter of 2024, from $22,645,000 in the first quarter, to $33,807,000 in the second quarter, an increase of 49% quarter over quarter. The trend continued into the third quarter already in progress, with Zenas spending $33,530,000 that quarter. This increase was

driven in large part by increased spending on obexelimab research, which increased from $12,295,000 in the first quarter to $22,788,000 in the second quarter and remaining at the high rate of $21,326,000 in the third quarter. The below table represents Zenas' R and D spending overall and on developing obexelimab for each quarter of 2024 as well as its cash flows from operations:

|  | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|
| Overall R&D | $22,645,000 | $33,807,000 | $33,530,000 | $49,157,000 |
| Obexelimab R&D | $12,295,000 | $22,788,000 | $21,326,000 | $38,154,000 |
| Cash Flows from Operations | -$19,102,000 | -$30,959,000 | -$31,059,000 | -$38,554,000 |

43.     By failing to separately disclose its first and second quarter expenses and cash burn rate, Defendants materially misled investors into believing that Zenas was spending less quickly than it actually was, which was highly material to investors given the fact that Zenas was a development stage biotechnology company with no revenues.

**DEFENDANTS VIOLATED THEIR AFFIRMATIVE OBLIGATION TO DISCLOSE MATERIAL RISKS AND UNCERTAINTIES UNDER SEC REGULATIONS**

44.     Registrants are obligated to "provide, under the caption 'Risk Factors,' a discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. §229.105. The presentation of risks that could apply generically to any registrant or any offering is discouraged. *Id*. Where a summary of risk factors is required, the issuer should provide "a series of concise, bulleted or numbered statements that is no more than two pages summarizing the principal factors that make an investment in the registrant or offering speculative or risky." *Id*.

45.     The Reg. S-K, Item 303, also requires a registrant to discusses in the "Management's Discussion and Analysis of financial condition and results of operations" material information relevant to an assessment of the financial condition and results of operations of the registrant including an evaluation of the amounts and certainty of cash flows from operations and from outside sources. 17 C.F.R. § 229.303. The discussion and analysis must focus specifically on material events and uncertainties known to management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. *Id*. This includes descriptions and amounts of matters that have had a material impact on reported operations, as well as matters that are reasonably likely based on management's assessment to have a material impact on future operations. *Id*. The discussion and analysis must be of the financial statements and other statistical data that the registrant believes will enhance a reader's understanding of the registrant's financial condition, cash flows and other changes in financial condition and results of operations. *Id*. A discussion and analysis that meets the requirements of this paragraph is expected to better allow investors to view the registrant from management's perspective. *Id*.

46.     In a 1989 Interpretive Release, the SEC described the purposes of MD&A:

The Commission has long recognized the need for a narrative explanation of the financial statements, because a numerical presentation and brief accompanying footnotes alone may be insufficient for an investor to judge the quality of earnings and the likelihood that past performance is indicative of future performance. MD&A is intended to give investors an opportunity to look at the registrant through the eyes of management by providing a historical and prospective analysis of the registrant's financial condition and results of operations, with a particular emphasis on the registrant's prospects for the future.

Management's Discussion & Analysis of Fin. Condition & Results of Operations; Certain Inv. Co. Disclosures, Release No. 6835 (May 18, 1989) (the "1989 Interpretive Release") available at 1989 WL 1092885.[1]

47.     Item 303 creates a duty to disclose a known trend, event or uncertainty unless management determines that a material effect on financial condition or results of operations is not likely to appear. The 1989 Interpretive Release provides the following test to determine if disclosure under Item 303(a) or Part I, Item 5 of Form 20-F is required:

> Where a trend, demand, commitment, event or uncertainty is known, management must make two assessments:
> (1) Is the known trend, demand, commitment, event or uncertainty likely to come to fruition? If management determines that it is not reasonably likely to occur, no disclosure is required. (2) If management cannot make that determination, it must evaluate objectively the consequences of the known trend, demand, commitment, event or uncertainty, on the assumption that it will come to fruition. Disclosure is then required unless management determines that a material effect on the registrant's financial condition or results is not reasonably likely to occur.

1989 Interpretive Release, 1989 WL 1092885, at *6.

48.     Issuers must disclose actual regulatory or contemplated regulatory action, as shown by an example provided by the 1989 Interpretive Release:

> Facts: A registrant has been correctly designated a PRP by the EPA with respect to cleanup of hazardous waste at three sites. No statutory defenses are available. The registrant is in the process of preliminary investigations of the sites to determine the nature of its potential liability and the amount of remedial costs necessary to clean up the sites. Other PRPs also have been designated, but the ability to obtain contribution is unclear, as is the extent of insurance coverage, if any. Management is unable to determine that a material effect on future financial condition or results of operations is not reasonably likely to occur.

> Based upon the facts of this hypothetical case, MD&A disclosure of the effects of the PRP status, quantified to the extent reasonably practicable, would be required.

---

[1] The 1989 Interpretive Guidance applies to Item 5(d) of Form 20-F. Form 20-F, Instruction 5 (stating that issuers should refer to the 1989 Interpretive Guidance); 2003 Guidance, at 2003 WL 22996757, *1 n.1 (same).

[Footnote omitted]. For MD&A purposes, aggregate potential cleanup costs must be considered in light of the joint and several liability to which a PRP is subject. Facts regarding whether insurance coverage may be contested, and whether and to what extent potential sources of contribution or indemnification constitute reliable sources of recovery may be factored into the determination of whether a material future effect is not reasonably likely to occur.

*Id.* at *6.

49.    Issuers must disclose both (a) known trends and uncertainties and (b) any potential material impact of known trends and uncertainties on their own operations even if the trends are a matter of public knowledge. 1989 Interpretive Release, 1989 WL 1092885 at *6.

50.    Defendants knew that the Company's R&D expenses had materially increased between the first and second quarters of 2024, and remained higher in the quarter in progress. In the context of Defendants' affirmative disclosures about its revenues, Defendants failed to disclose the trend and its impact on the Company's finances.

**Materially False and Misleading Statements**

51.    On or about August 22, 2024, Zenas BioPharma filed with the SEC a Registration Statement on Form S-1, which in combination with a subsequent amendment on Form S-1/A, and which was declared effective by the SEC on September 12, 2024, would be used for the IPO.

52.    In the IPO, Zenas BioPharma sold 13,235,294 shares at $17.00 per share.

53.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

54.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

55.     The Registration Statement included the following Consolidated Statements of Operations Data:

| (in thousands except share and per share amounts) | Six Months Ended June 30, | | Year Ended December 31, | |
| --- | --- | --- | --- | --- |
| | 2024 | 2023 | 2023 | 2022 |
| **Consolidated Statements of Operations Data:** | | | | |
| Revenue: | | | | |
| Collaboration revenue | $ — | $ — | $ 50,000 | $ — |
| Total revenue | — | — | 50,000 | — |
| Operating expenses: | | | | |
| Research and development (includes $1,872, $2,117, $3,041 and $8,149 from related parties, respectively) | 56,452 | 30,262 | 60,033 | 61,689 |
| General and administrative (includes $0, $5, $8 and $103 from related parties, respectively) | 10,828 | 7,729 | 17,114 | 13,510 |
| Acquired in-process research and development | — | 10,000 | 10,000 | 1,000 |
| Total operating expenses | 67,280 | 47,991 | 87,147 | 76,199 |
| Loss from operations | (67,280) | (47,991) | (37,147) | (76,199) |

56.     The statement referenced in ¶ 55 above was materially false and/or misleading because it misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results. Specifically, the Registration Statement contained false and/or misleading statements and/or failed to disclose that: (1) its R&D expenses had materially increased between the first and second quarter of 2024, and remained at a higher rate during the already in progress third quarter; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times and negligently prepared.

57.     The Registration Statement included the following Condensed Consolidated Statement of Cash Flows Data:

**Condensed Consolidated Statements of Cash Flows**
**(Unaudited)**
**(in thousands)**

| | Six Months Ended June 30, | |
| --- | --- | --- |
| | 2024 | 2023 |
| **Cash flows from operating activities:** | | |
| Net loss | $ (65,777) | $ (48,144) |
| Adjustments to reconcile net loss to net cash used in operating activities: | | |
| Acquired in-process research and development | — | 10,000 |
| Depreciation expense | 68 | 57 |
| Stock-based compensation expense | 2,483 | 1,356 |
| Change in fair value of convertible notes | 846 | — |
| Non-cash lease expense | 298 | 398 |
| Changes in operating assets and liabilities: | | |
| Prepaid expenses and other assets | (1,315) | (1,697) |
| Accounts payable | 2,927 | (2,198) |
| Accrued expenses | 10,184 | (6,357) |
| Operating lease liabilities | (305) | (390) |
| Other current liabilities | 530 | — |
| Net cash used in operating activities | (50,061) | (46,975) |

58.     The statement referenced in ¶ 57 above was materially false and/or misleading because it misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results. Specifically, the Registration Statement contained false and/or misleading statements and/or failed to disclose that: (1) its cash burn had materially increased between the first and second quarter of 2024, and remained at a higher rate during the already in progress third quarter; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times and negligently prepared.

59.     The Registration Statement included the following table regarding Zenas' cash flows:

| | Six Months Ended June 30, | | Year Ended December 31, | |
| --- | --- | --- | --- | --- |
| | 2024 | 2023 | 2023 | 2022 |
| Net cash used in operating activities | $(50,061) | $(46,975) | $(30,529) | $(65,652) |

| | | | | |
|---|---|---|---|---|
| Net cash used in investing activities | (57) | — | (17) | (2,198) |
| Net cash provided by financing activities | 177,125 | 66 | 20,116 | 59,391 |
| Effect of exchange rate changes on cash and restricted cash | 68 | 161 | 78 | (41) |
| Net increase (decrease) in cash and restricted cash | $ 127,075 | $(46,748) | $(10,352) | $ (8,500) |

60.    The statement referenced in ¶ 59 above was materially false and/or misleading because it misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results. Specifically, the Registration Statement contained false and/or misleading statements and/or failed to disclose that: (1) its cash burn had materially increased between the first and second quarter of 2024, and remained at a higher rate during the already in progress third quarter; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times and negligently prepared.

61.    Since the IPO, and as a result of the disclosure of material adverse facts omitted from Zenas BioPharma's Registration Statement, Zenas BioPharma's share price has fallen substantially below its IPO price, damaging Plaintiff and Class members. As of the close of trading on April 16, 2025, the closing price of Zenas BioPharma stock was $8.33, 48.7% below the IPO price.

62.    Additionally, due to the materially deficient Registration Statement, Defendants have also violated their independent, affirmative duty to provide adequate disclosures about adverse conditions, risk and uncertainties. Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii) requires that the materials incorporated in a registration statement disclose all "known trends or uncertainties" reasonably expected to have a material unfavorable impact on the Company's operations.

63.     SEC Regulation S-K, 17 C.F.R. § 229.503, required the "Risk Factor" section of the Registration Statement to discuss the most significant factors that made the Offering risky or speculative and that each risk factor adequately described the risk. Defendants' failure to disclose the already occurring significant problems underlying its base business, as well as the likely material effects it would have on the Company's ADS price, rendered the Registration Statement's many references to known risks that "if" occurring "may" or "could" adversely affect the Company as false and misleading.

64.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action as a class action on behalf of all those who purchased Zenas BioPharma common stock on or before March 12, 2025, pursuant and/or traceable to the Registration Statement. Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

66.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Zenas BioPharma or its transfer agent and may be

notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

67.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

68.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

69.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)      whether Defendants violated the federal securities laws;

b)      whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

70.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
## Violations of Section 11 of the Securities Act Against All Defendants

71.     Plaintiff incorporates all the foregoing by reference.

72.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

73.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

74.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

75.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

76.     By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

77.     Plaintiff acquired Zenas BioPharma securities pursuant to the Registration Statement.

78.     At the time of their purchases of Zenas BioPharma securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

79.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT II
## Violations of Section 15 of the Securities Act Against the Individual Defendants

80.     Plaintiff incorporates all the foregoing by reference.

81.     This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

82.     The Individual Defendants were controlling persons of Zenas BioPharma by virtue of their positions as directors or senior officers of Zenas BioPharma. The Individual Defendants each had a series  of direct and indirect business and personal relationships with other directors and officers and major shareholders of Zenas BioPharma. The Company controlled the Individual Defendants and all of Zenas BioPharma's employees.

83.     Zenas BioPharma and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

84.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

A.    declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

B.    awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

C.    awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 21, 2025                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Joshua Baker, Esq.
Joshua Baker, Esq. (BBO # 695561)
101 Greenwood Ave., Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827

Phillip Kim, Esq. (*pro hac vice* to be submitted)
Laurence M. Rosen, Esq. (*pro hac vice* to be submitted)
Jonathan Stern, Esq. (*pro hac vice to be submitted*)
275 Madison Ave., 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: philkim@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, a true and correct copy of the foregoing **AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Joshua Baker