**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NOPPHOL BUATHONGSRI, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ZENAS BIOPHARMA, INC. LEON O. MOULDER, JR., JENNIFER FOX, PATRICIA ALLEN, JAMES BOYLAN, PATRICK ENRIGHT, TOMAS KISELAK, HONGBO LU, PH.D, JAKE NUNN, JOHN ORLOFF, M.D., TING XIAO, MORGAN STANLEY & CO. LLC, JEFFERIES LLC, CITIGROUP GLOBAL MARKETS, INC., GUGGENHEIM SECURITIES, LLC,<br><br>    Defendants. | Case No. 1:25-cv-10988<br>Hon. Leo T. Sorokin<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE**
**AMENDED CLASS ACTION COMPLAINT FOR**
**<u>VIOLATION OF THE FEDERAL SECURITIES LAWS</u>**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 4

LEGAL STANDARD ............................................................................................................ 9

ARGUMENT ........................................................................................................................ 10

I.       PLAINTIFF FAILS TO PLEAD A SECTION 11 CLAIM ......................................... 10

    A.   Zenas' R&D Disclosures Were Accurate, Complete, and Not Misleading ................... 10

    B.   Plaintiff Fails to Plead an Item 303 Violation ................................................. 18

II.     PLAINTIFF'S SECTION 15 CLAIM MUST BE DISMISSED .................................. 20

III.    ANY DISMISSAL SHOULD BE WITH PREJUDICE ................................................ 20

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelos v. Tokai Pharma., Inc.*,
494 F. Supp. 3d 39 (D. Mass. 2020) ........................................................................10, 13, 14, 16

*Asay v. Pinduoduo Inc.*,
2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) ..................................................................19, 20

*Asay v. Pinduoduo Inc.*,
2021 WL 3871269 (2d Cir. Aug. 31, 2021)........................................................................14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2007).........................................................................................................................9

*Batson v. Rim San Antonio Acquisition, LCC*,
2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016).........................................................................12

*Cody v. Conformis, Inc.*,
199 F. Supp. 3d 409 (D. Mass. 2016) ...............................................................10, 11, 15, 20

*Mahoney v. Foundation Med., Inc.*,
342 F. Supp. 3d 206 (D. Mass. 2018) ...........................................................................5, 20

*May v. Barclays PLC*,
2025 WL 887300 (S.D.N.Y. Mar. 21, 2025) ...................................................................11, 17

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)........................................................................................................16

*In re Netflix, Inc. Sec. Litig.*,
2005 WL 1562858 (N.D. Cal. June 28, 2005) .......................................................................12

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 Fed. Appx. 10 (2d Cir.2011).............................................................................................15

*Peifa Xu v. Gridsum Holding Inc.*,
2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) .......................................................................13

*Pension Tr. v. J. Jill, Inc.*,
360 F. Supp. 3d 17 (D. Mass. 2018) ................................................................................ *passim*

*In re ProShares Tr. Sec. Litig.*,
728 F.3d 96 (2d Cir. 2013).................................................................................10, 13, 17

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012).................................................................................16

*In re Skechers U.S.A., Inc. Sec. Litig.*,
  2020 WL 1233759 (S.D.N.Y. Mar. 12, 2020) .....................................................................12

*St. John v. Cloopen Grp. Holding Ltd.*,
  171 N.Y.S.3d 893 (N.Y. Sup. Ct. 2022) .............................................................................17

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
  412 F. Supp. 3d 353 (S.D.N.Y. 2019)..................................................................................18

*Tharp v. Acacia Commc'ns, Inc.*,
  321 F. Supp. 3d 206 (D. Mass. 2018) ..................................................................................19

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
  202 F. Supp. 2d 8 (S.D.N.Y.2001) ......................................................................................18

*Wandel v. Gao*,
  590 F. Supp. 3d 630 (S.D.N.Y. 2023)..................................................................................18

*Wang Yan v. ReWalk Robotics Ltd.*,
  330 F. Supp. 3d 555 (D. Mass. 2018) ............................................................................16, 20

*Yan v. ReWalk Robotics Ltd.*,
  973 F.3d 22 (1st Cir. 2020)..................................................................................................19

*Yaroni v. Pintec Tech. Holdings Ltd.*,
  600 F. Supp. 3d 385 (S.D.N.Y. 2022)..................................................................................15

**Statutes**

15 U.S.C. § 77o................................................................................................................................20

**Other Authorities**

17 C.F.R. § 229.303 ...........................................................................................................11, 18, 20

17 C.F.R. §§ 229.302 ...................................................................................................................11

## PRELIMINARY STATEMENT[1]

Plaintiff's Amended Complaint (ECF No. 22) attempts to contrive claims under Sections 11 and 15 of the Securities Act of 1933 (the "'33 Act") based on a purported failure by Zenas—a clinical-stage biotech company that develops treatments for autoimmune diseases—to disclose "material increases" in its research and development ("R&D") spending ahead of its September 2024 initial public offering (the "IPO"). That attempt fails; Plaintiff's '33 Act claims against the Zenas and Underwriter Defendants[2] are meritless and should be dismissed with prejudice.

This is not Plaintiff's first attempt to plead a viable disclosure claim. Last April, Plaintiff filed his initial pleading (ECF No. 1), baselessly accusing Zenas of violating the '33 Act *not* by failing to detail its R&D expenditures, but by supposedly failing to accurately disclose its cash runway. Plaintiff obviously misread the offering documents; Zenas disclosed all material facts concerning its runway. Now, seeking a do-over seven months later, Plaintiff has filed an Amended Complaint that abandons his ill-considered cash runway theory and pivots, instead, to an entirely new (but equally baseless) theory. Plaintiff now claims that Defendants violated Sections 11 and 15 of the '33 Act because Zenas' IPO Registration Statement did not separately disclose a 49% increase in Zenas' R&D "burn rate"—its R&D spending—between Q1 and Q2 2024.

Plaintiff identifies no SEC regulation requiring such disclosures. He cannot do so because Zenas' disclosures complied with SEC rules. And, in fact, Zenas *did* disclose its Q1 2024 R&D expenses in a draft registration statement that was submitted to the SEC before Q2 2024's close

---

[1] Unless indicated otherwise, all internal quotation marks and citations are omitted and all emphasis is added. Citations to "¶ __" refer to the Amended Complaint (ECF No. 22). Citations to "Ex." refer to the exhibits to the Declaration of J. William Piereson ("Piereson Decl.").

[2] The Zenas Defendants are Zenas BioPharma, Inc. ("Zenas"), Leon O. Moulder, Jr., Jennifer Fox, Patricia Allen, James Boylan, Patrick Enright, Tomas Kiselak, Hongbo Lu, Ph.D., Jake Nunn, John Orloff, M.D., Ting Xiao. The Underwriter Defendants are Morgan Stanley & Co. LLC, Jefferies LLC, Citigroup Global Markets, Inc., and Guggenheim Securities, LLC. The Zenas and Underwriter Defendants are collectively referred to herein as "Defendants."

and became publicly available prior to the IPO.  That is, at a time when Zenas did not have and could not disclose its 1H 2024 R&D expenses, Zenas disclosed its Q1 2024 expenses as contemplated by SEC regulations.  In the final Registration Statement, filed ***after*** the close of Q2 2024, Zenas disclosed its full 1H 2024 expenses, rather than quarterly Q1 2024 and Q2 2024 expenses, consistent with SEC regulations.  Plaintiff nonetheless quibbles with Zenas' decision to disclose 1H 2024 R&D spending in the final Registration Statement without additional disclosure of quarter-over-quarter R&D expenditures from Q1 to Q2 2024.  Plaintiff claims that doing so "concealed a crucial fact[:] that [Zenas'] R&D expenses, and therefore its cash burn, increased by [49%] between [Q1 and Q2 2024], and remained at that heightened level in the in-progress third quarter," ¶ 5, leaving investors with a misleading impression that Zenas was "spending less quickly than it actually was" at the time of the IPO, ¶ 43.

The Registration Statement clearly demonstrates that Zenas "concealed" nothing at all. Zenas, in prominent and explicit disclosures throughout the offering materials, confirmed what was an unsurprising fact to biotech investors: Zenas' R&D expenditures were rising significantly in the lead-up to the IPO.  The Registration Statement disclosed that Zenas' R&D spend increased ***by 89.6%*** between 2H 2023 and 1H 2024—a ***higher increase*** in "cash burn" from "R&D expenses" during the six months that encompassed Q1 and Q2 2024 than what Plaintiff alleges was "concealed" by the Registration Statement.  The Registration Statement also disclosed Zenas' 1H 2023 and 1H 2024 R&D expenses, similarly showing an ***86.5% year-over-year increase***.  In other words, Zenas disclosed ***higher increases*** in the rate of cash burn from R&D expenses for multiple periods than what Plaintiff claims should have been disclosed via any quarterly disclosures.

The Registration Statement's other R&D-related disclosures painted the same picture. Zenas told investors that its R&D expenditures would "continue to increase for the foreseeable

future" as it worked to advance its portfolio of product candidates. And—ironically—the very cash runway disclosures that Plaintiff seized on originally now undercut his claims based on Zenas' R&D-related disclosures: those disclosures made clear that Zenas, with the IPO proceeds, had runway through Q3 2026 and would be spending ***up to $49 million (on average) per quarter*** until then, a significant portion of which would consist of cash burn from R&D expenses. The Registration Statement thus was clear and consistent: Zenas' R&D spend had risen significantly in the lead-up to the IPO and would continue to increase significantly for the foreseeable future. Of course, ramping R&D expenses is typical and expected for clinical-stage biotech companies and, indeed, is the very reason they go public—to tap capital to fund later-stage (and more costly) clinical trials. A reasonable biotech investor fully expects this and Zenas fits this profile exactly.

In the face of these disclosures, Plaintiff offers no plausible allegations explaining why Zenas had any duty to break out its Q1 2024 and Q2 2024 R&D cash burn, much less how a quarter-over-quarter 49% increase in R&D expenses could be material given the fully-disclosed increase in R&D expenses of 89.6% over the same two quarters combined. And, though Plaintiff claims that the Registration Statement misled investors about Zenas' R&D spending, the Amended Complaint does not identify a single disclosure that a reasonable investor could interpret as painting a misleading picture about Zenas' burn rate. Plaintiff thus does not come close to alleging that Zenas' disclosures were misleading in any sense, let alone materially so.

The same disclosures are also fatal to Plaintiff's claim that Zenas violated Item 303 by not disclosing a "trend or uncertainty" that might impact its financial performance. Though a quarter-to-quarter increase in R&D spending is no "trend" at all for Item 303 purposes, Zenas nevertheless amply disclosed that its R&D expenditures were increasing, and increasing significantly, ahead of the IPO. Those disclosures clearly communicated any relevant "trend" in Zenas' R&D cash burn.

-3-

Zenas likewise told investors that it expected its R&D spend to continue to rise and contribute to its net losses following the IPO's completion, which put investors on notice both of any "uncertainty" regarding Zenas' R&D spend *and* its potential impact on Zenas' bottom line. Lastly, because Plaintiff's Section 11 claim fails, his Section 15 claim also fails.

In light of the foregoing, and because this is Plaintiff's second meritless attempt at stating a '33 Act claim, the Amended Complaint should be dismissed with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

***Zenas BioPharma*:** Zenas is a clinical-stage biopharmaceutical company that develops immunology-based therapies for patients suffering from autoimmune diseases. ¶ 38; Piereson Decl., Ex. 1 (Reg. Stmt.) at 1. As a clinical-stage company, Zenas has a limited operating history, no products approved for commercial sale, and, therefore, no product revenues. *See* Ex. 1 at 2, 7; ¶ 4. Zenas' business is focused on the research, development, and eventual commercialization of its product candidates. Ex. 1 at 6.

Zenas has multiple product candidates. Its lead candidate is a drug called obexelimab, which is being evaluated in clinical trials for numerous autoimmune indications, including IgG4-RD, lupus and multiple sclerosis. At the time of the IPO, Zenas was undertaking major efforts to facilitate obexelimab's development and commercialization, including (i) enrolling patients in a global Phase 3 study of obexelimab in patients with IgG4-RD[4] and (ii) preparing to initiate, in Q3 2024, two Phase 2 trials for obexelimab in lupus and multiple sclerosis. Ex. 1 at 1–2; ¶ 38.

***Zenas Drafts IPO Offering Materials*:** When Zenas began planning its IPO, which would

---

[3] This background is drawn both from the Amended Complaint and from Zenas' Registration Statement. Plaintiff's claims are "necessarily dependent upon the Registration Statement," and so "the Court may properly consider the Registration Statement" on Defendants' motion to dismiss. *See Pension Tr. v. J. Jill, Inc.*, 360 F. Supp. 3d 17, 22 n.1 (D. Mass. 2018) (Sorokin, J.).

[4] In January 2026, as a direct result of the R&D expenses dedicated to this study, Zenas disclosed positive results and is now preparing to file for marketing approval with the FDA.

launch in September 2024, ¶ 2, it confidentially submitted draft versions of its IPO offering materials to the SEC, which permits issuers to submit draft registration statements for nonpublic review. Those drafts became public on August 22, 2024, prior to the IPO. Zenas' draft registration statements were prepared and confidentially submitted to the SEC prior to the end of Q2 2024— the latest of which was submitted on June 26, 2024. Because the drafts were prepared before 1H 2024 results were available, the draft versions *did* disclose Zenas' R&D spending for Q1 2024. Specifically, the draft statements disclosed that Zenas spent $22.6 million on R&D in Q1 2024, a $7.3 million (48%) year-over-year increase from Q1 2023. *See* Piereson Decl., Ex. 3 (Draft Reg. Stmt.) at 89.[5] In the final Registration Statement, those figures were replaced by disclosures about 1H 2024, consistent with SEC rules. Accordingly, both Q1 2024 and Q2 2024 quarterly R&D expense figures were available to (or easily calculable by) investors at the time of the IPO.

*Zenas Launches IPO and Discloses Rising R&D Spend*: In September 2024, Zenas' IPO launched at $17.00 per share. ¶ 2. Zenas submitted its Registration Statement to the SEC on August 22, 2024. It was amended on September 6, 2024, and became effective on September 12, 2024. *Id.* ¶ 51. The Underwriter Defendants were the IPO's joint book-running managers.

Zenas told investors in the Registration Statement that, as a clinical-stage company, it had "incurred significant operating losses and negative cash flows since inception," and "expect[ed] *to continue to incur significant and increasing losses* for the foreseeable future" as Zenas worked to, among other things, "continue clinical development of obexelimab and [its] other programs" and "advance [its] obexelimab program and [its] other product candidates through preclinical development and clinical trials." Ex. 1 at 83. Given those efforts, Zenas also provided detailed

---

[5] The Court may take judicial notice of these SEC filings in evaluating this motion to dismiss. *See Mahoney v. Foundation Med., Inc.*, 342 F. Supp. 3d 206, 216 n.4 (D. Mass. 2018) (Sorokin, J.).

disclosures about its R&D expenses.  As Zenas told investors, "[R&D] activities are central to [its] business model" (*id.* at 86) and therefore R&D expenses "account[ed] for a significant portion of [its] operating expenses" (*id.* at 85).  Zenas thus disclosed that it "***expect[ed] that [its] research and development expenses [would] continue to increase for the foreseeable future*** as," among other things, it "advance[d] clinical trials for [its] product candidates."  *Id.* at 86.  Zenas likewise emphasized that it "expect[ed] that [its] research and development . . . costs will increase in connection with [its] planned research and clinical activities."  *Id.* at 95.  Zenas also disclosed that its spending would "not [be] uniform," ¶ 42, as its "net losses may fluctuate significantly from period to period, depending on the timing of our planned clinical studies and expenditures related to our research and development activities,"  Ex. 1 at 84.

As Plaintiff made the centerpiece of his initial complaint, Zenas also told investors that, as of the IPO, it had $183.9 million in cash, not including IPO proceeds—expected to be at least $180.7 million and up to $208.6 million if the Underwriters fully exercised their over-allotment option, and "approximately $100.0 million" of which would be used on obexelimab's development.  *Id.* at 10, 15.  Zenas disclosed that cash, together with the IPO proceeds, would fund its operations for 24 months, *i.e.*, until Q3 2026.  *Id.* at 15.  Even assuming low-end IPO proceeds, that guidance thereby disclosed that Zenas' spending would ***average*** $46.6 million over each of the next eight quarters following the IPO, a "significant portion" of which would be R&D spending.  And, at the proceeds' high-end, average expected spend would increase to $49 million per quarter.  *Id.* at 85.

The Registration Statement also explicitly disclosed that, at the time of the IPO, Zenas' R&D costs had been, and were presently, rapidly rising (an unsurprising and normal fact for a clinical-stage biotech company).  Plaintiff acknowledges that the Registration Statement disclosed that Zenas spent $56.5 million on R&D ***in 1H 2024 alone***, ¶ 41, but conspicuously ignores that

this figure was ***nearly as much as Zenas disclosed it spent on R&D for the entirety of 2023*** (approximately $60 million). *See* Ex. 1 at 91. Zenas likewise disclosed that it spent $30.3 million during 1H 2023. *Id.* at 89. With the R&D spending for FY 2023—$60 million—investors could easily calculate that Zenas' R&D 1H 2024 spending—$56.45 million—far outpaced its R&D spending in 2H 2023—$29.77 million.[6] In fact, based on those readily calculable numbers, Zenas' R&D spending in 1H 2024 increased ***by 89.6%*** from its R&D spending in 2H 2023. And Zenas' disclosure that it spent $30.3 million in 1H 2023 also made clear that there was ***an 86.5% year-over-year increase in R&D spend between 1H 2023 and 1H 2024***. *See* Table 1, below.

**Table 1 (1H 2023, 2H 2023, 1H 2024 R&D Spend & Percent Change)**

| Disclosed R&D Spend Through June 30, 2023 (1H 2023) | Disclosed R&D Spend Through Dec. 31, 2023 (2H 2023) | Disclosed R&D Spend Through June 30, 2024 (1H 2024) |
|---|---|---|
| $30.26MM | $29.77MM | $56.45MM *(89.6% increase on 2H 2023; 86.5% increase on 1H 2023)* |

In its qualitative disclosures on increases between 1H 2023 and 1H 2024, Zenas also explained that "[t]he increase of $26.2 million" between 1H 2023 and 1H 2024 "was primarily attributable to . . . a $22.1 million increase in costs related to the development of obexelimab . . . driven by," in part, "a $10.5 million increase in costs related to the conducting and initiation of clinical trials." Ex.1 at 89. The IPO closed on September 16, 2024.

***Plaintiff Files Suit and Reinvents His Case***: Plaintiff filed his initial complaint on April

---

[6] This figure is obtained through simple arithmetic: subtracting $30,262,000 (Zenas' explicitly disclosed R&D spend in 1H 2023) from $60,033,000 (Zenas' explicitly disclosed R&D spend for FY 2023). The rate of increase from 2H 2023 to 1H 2024 is then also easily calculated by dividing $56,452,000 (the R&D spend in 1H 2024) by $29,771,000 (the R&D spend in 2H 2023).

16, 2025 (ECF No. 1). There, Plaintiff brought claims under Sections 11, 12(a)(2), and 15 of the '33 Act based exclusively on the allegation that the Registration Statement misled investors by "materially overstat[ing] the amount of time that [Zenas] would be able to fund its operations using existing cash and expected net proceeds from the IPO." *See* ECF No. 1, ¶¶ 34–35. That theory was based on Zenas' disclosure (discussed above) that it had $183.9 million in cash and "at least . . . 24 months" of cash runway (to Q3 2026), and Zenas' required going concern disclosure in its November 2024 10-Q that it had $386.8 million in cash but "at least twelve months" of runway. *Id.* ¶¶ 34–36. Plaintiff, however, misread the disclosures. The 10-Q disclosure actually *increased* Zenas' cash runway to Q4 2026, making the first complaint's theory baseless. *See* Piereson Decl., Ex. 4 (Nov. 2024 10-Q) at 30. The initial complaint also made no mention of R&D "burn rate."

The Court granted Plaintiff's lead plaintiff application on August 21, 2025 (ECF No. 16). Three months later (and over seven months after filing the first complaint), on November 21, 2025, Plaintiff filed the Amended Complaint (ECF No. 22). Plaintiff now brings claims under Sections 11 and 15 of the '33 Act, but drops his Section 12(a)(2) claim.[7]

The Amended Complaint completely abandons Plaintiff's original theory of '33 Act liability—that Zenas allegedly misled investors about its cash runway—in favor of a new one: that Zenas allegedly misled investors by failing to "separately" disclose its Q1 and Q2 2024 "burn rate," *i.e.*, its "first and second quarter [R&D expenses]." ¶ 43.[8] Apparently conceding the accuracy of

---

[7] The Amended Complaint confusingly references a Section 12(a)(2) claim, *see* ¶¶ 6, 83, but does not actually include a Section 12(a)(2) count. The Amended Complaint contains other apparent errors, such as allegations about "significant problems underlying [Zenas'] base business" and Zenas' "ADS price" that appear nowhere else and have no bearing on Plaintiff's theory about Zenas' R&D spending. *See* ¶ 63. Defendants do not specifically respond to these errors.

[8] Materials cited by Plaintiff define "burn rate" simply as "the level and rate of expenditures needed for R&D" and say nothing about *quarterly* burn rates, much less their relevance to the valuation of early-stage biotech companies like Zenas. *See Letter from BIO to the SEC, File No. S7-06-19: Amendments to the Accelerated Filer and Large Accelerated Filer Definitions* (dated July 29,

Zenas' cash runway disclosures, Plaintiff now seizes on three tables summarizing Zenas' financials prior to the IPO, which Plaintiff claims misled investors by "fail[ing] to disclose that . . . [Zenas'] R&D expenses had materially increased between the first and second quarter of 2024." *See* ¶¶ 55–57, 59. Specifically, the Amended Complaint alleges that the Registration Statement omitted the fact that "Zenas' R&D expenses dramatically increased . . . from [\$22.645 million] in [Q1 2024] to [\$33.807 million] in [Q2 2024], an increase of 49% quarter over quarter." *Id.* ¶ 42. The Amended Complaint notably does not identify any disclosure in the Registration Statement that conflicted with Zenas' clear messaging in the Registration Statement that its R&D expenses were increasing significantly in the lead up to the IPO and would only continue to do so. Nor, curiously, does the Amended Complaint identify any corrective disclosure that revealed the purported truth about Zenas' burn rate and caused Zenas' stock price to drop.[9]

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007). To plead his Section 11 claim, Plaintiff must plausibly allege that the Registration Statement "omitted to state a material fact required to be stated therein or necessary

_____

2019), at 26 n.53 (cited and quoted ¶ 37), *available at* https://www.sec.gov/comments/s7-06-19/s70619-5881309-188765.pdf.

[9] Plaintiff's failure to allege a specific corrective disclosure is particularly conspicuous because his original complaint *did* allege a corrective disclosure in November 2024. *See* ECF No. 1, ¶¶ 36–37. There, however, Plaintiff attributed the stock drop solely to the disclosure of supposedly "adverse facts" about Zenas' cash runway. *Id.* Now, Plaintiff has changed gears to allege that a stock drop was caused by revelations (in unspecified post-IPO disclosures from an unspecified date) about Zenas' R&D spending. *See* ¶ 61. But the materials cited by Plaintiff actually suggest that, far from being a source of concern that would cause a stock drop, details about significant increases in Zenas' R&D spending would "convey[] *positive* information to investors" given Zenas was working to "advanc[e] through the various stages of the FDA approval process." *See supra* n.8 at 39 n.76. The absence of loss causation is an affirmative defense to Plaintiff's '33 Act claims, and his loss causation theory in this case appears entirely unsupported.

to make the statements therein not misleading." *Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 416 (D. Mass. 2016). Section 11 claims "often present two central issues: (1) the existence of . . . an unlawful omission; and (2) materiality." *Pension Tr.*, 360 F. Supp. 3d at 22. "[C]onclusory assertion[s]" about those elements, without more, are "insufficient to plausibly plead a claim for relief" under the '33 Act. *Id.* at 28, 30; *Cody*, 199 F. Supp. 3d at 417–18 (dismissing '33 Act claims where allegations were "far too general to meet the plausibility requirement of Rule 8").

## ARGUMENT

Plaintiff fails to plead his '33 Act claims. The crux of his claims is that Zenas allegedly omitted from the Registration Statement "highly material" details about "material[] increas[es]" in Zenas' cash burn rate "during the lead up to the IPO," which Plaintiff asserts "misled investors into believing that Zenas was spending less quickly than it actually was." ¶¶ 37, 43. That theory is baseless. To start, Zenas was under no affirmative obligation to disclose quarterly data. Moreover, any allegation that Zenas misled investors about "material[] increas[es]" in its R&D spending ahead of the IPO is debunked by the Registration Statement's numerous, crystal clear disclosures ***on that exact subject***. Zenas extensively disclosed its increasing R&D spending in the lead-up to the IPO, told investors that R&D spending would significantly increase in the future, and provided numerous other indicators that its R&D spend was rising (including the very cash runway disclosures that Plaintiff attempted to weaponize in his first complaint). As discussed below, these disclosures require dismissal, with prejudice, of Plaintiff's '33 Act claims.

## I.    PLAINTIFF FAILS TO PLEAD A SECTION 11 CLAIM

### A.    Zenas' R&D Disclosures Were Accurate, Complete, and Not Misleading

Zenas' Registration Statement must be reviewed "cover-to-cover" and its disclosures "taken together and in context" to determine whether any omission was materially misleading. *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 103 (2d Cir. 2013); *see also Angelos v. Tokai Pharma.,*

-10-

*Inc.*, 494 F. Supp. 3d 39, 54 (D. Mass. 2020) (evaluating omissions "in the context of the totality of the Registration Statement"). The Amended Complaint, however, offers no plausible allegation concerning how the Registration Statement could have materially misled investors. Zenas correctly disclosed all required material information concerning its R&D expenditures, including the very information about considerable increases in its R&D-related cash burn that the Amended Complaint posits was withheld. And Plaintiff otherwise "do[es] not allege what, if anything, could have given rise to a duty to disclose [quarterly data] and therefore fail[s] to plead an actionable omission." *See May v. Barclays PLC*, 2025 WL 887300, at *23 (S.D.N.Y. Mar. 21, 2025).

*No Affirmative Disclosure Obligation*: As a threshold matter, Plaintiff does not (and cannot) allege that Zenas had an affirmative duty to disclose its Q1 and Q2 2024 R&D cash burn. Given the IPO's timing in September 2024, Zenas, consistent with SEC regulations, provided interim financial data for 1H 2024. *See* 17 C.F.R. § 229.303(c)(2)(i) (requiring disclosures for "the most recent fiscal year-to-date period for which a statement of comprehensive income is provided," *i.e.*, 1H 2024). Likewise, the SEC has specific regulations governing quarterly disclosures that do not apply to issuers such as Zenas that qualify as "smaller reporting compan[ies]" or, more critically, to IPO registration statements and, in any event, are inapplicable here. *See* 17 C.F.R. §§ 229.302(a)(2)–(3). Zenas thus had no direct obligation to break out its R&D spending for Q1 and Q2 2024 (and Plaintiff alleges none). Because Plaintiff "do[es] not allege that [Zenas] neglected to disclose something specifically required by rule," he may only state a claim by pleading "omissions of information necessary to make the statements [in the disclosures] not misleading." *Cody*, 199 F. Supp. 3d at 416. As discussed below, he fails to do so.

*Zenas Disclosed All Material Information About R&D Spending Increases*: The Registration Statement was not misleading first because Zenas fully disclosed all material

information about its rising R&D spending. *See Batson v. Rim San Antonio Acquisition, LCC*, 2016 WL 6901312, at *6 (S.D.N.Y. Nov. 22, 2016) ("Plaintiffs cannot have been misled about a fact that was disclosed in the Offering Memorandum.").

While Plaintiff claims that investors were somehow unaware of "material[] increas[es]" in Zenas' burn rate "during the lead up to the IPO," ¶ 37, the Registration Statement belies that sweeping allegation because in fact, the Registration Statement contained a litany of disclosures on *precisely the same subject*. Specifically, Zenas disclosed:

- That its R&D expenses *increased by 89.6%* between 2H 2023 and 1H 2024;[10]

- That its R&D expenses *increased from $30.3 million in 1H 2023 to $56.5 million in the 1H 2024*, the 1H 2024 spend being nearly as much as it spent *over the entirety of 2023*, and a year-over-year increase of *86.5%*;

- That the vast majority of the $26.2 million increase in R&D spending in 1H 2024 was due *to $22.1 million in spend on clinical trials for obexelimab*; and

- That it "*expect[ed] that [its R&D] expenses [would] continue to increase for the foreseeable future*," *i.e.*, that R&D spending was currently increasing and would only continue to do so going forward.

*See supra* at 6–7 (citing Ex. 1 at 83, 85–86, 89, 91, 95).

Far from omitting details about Zenas' rising R&D spending, the Registration Statement fully disclosed that Zenas' R&D expenses had—unsurprisingly, given Zenas is a clinical-stage company advancing later-stage (*i.e.*, larger and more expensive) trials—jumped in the lead-up to the IPO. '33 Act claims are routinely dismissed in these exact circumstances, where the issuer

---

[10] As discussed above, *supra* n.6, a reasonable investor could easily calculate this rate of increase from information in the Registration Statement. *See e.g.*, *In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *6 (N.D. Cal. June 28, 2005) (rejecting allegations based on omission of subscription cancellations where "number could be calculated through simple arithmetic using other numbers that were disclosed"); *In re Skechers U.S.A., Inc. Sec. Litig.*, 2020 WL 1233759, at *14 n.13 (S.D.N.Y. Mar. 12, 2020) (rejecting omissions claim where "any reasonable investor could have calculated the allegedly omitted trend").

fully disclosed the very information that was allegedly omitted from the offering materials. The Court should do the same here. *See, e.g.*, *Pension Tr.*, 360 F. Supp. 3d at 28–30 (Sorokin, J.) (dismissing Section 11 claim based on disclosure of allegedly omitted information in Registration Statement); *Angelos*, 494 F. Supp. 3d at 49–51 (dismissing Section 11 claim and finding that plaintiff failed to plausibly allege misleading omissions where purportedly omitted facts were "accurately disclosed numerous times in the Registration Statement").

*Any Quarterly Disclosures Were Immaterial*: Nor does Plaintiff offer any cogent (much less plausible) allegations that disclosures about Zenas' Q1 and Q2 2024 burn rates would be additive, *i.e.*, material, given the bevy of information Zenas disclosed about its R&D spending. Materiality is a "meaningful pleading obstacle" for '33 Act plaintiffs. *ProShares*, 728 F.3d at 102. Pleading materiality requires plausible allegations that there is a "substantial likelihood that a reasonable investor would have viewed [the allegedly undisclosed information] as significantly alter[ing] the total mix of information made available." *Angelos*, 494 F. Supp. 3d at 49.

The Amended Complaint contains *no* allegations plausibly suggesting *any* likelihood that any omission of Q1 and Q2 2024 R&D spending figures altered the total mix of information available, let alone a substantial likelihood. *See Peifa Xu v. Gridsum Holding Inc.*, 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020) (finding omission immaterial where "plaintiffs have not provided the Court with any reason why these changed line items . . . altered the total mix of information available"). Plaintiff offers no explanation for why a reasonable investor in a clinical-stage biotech company such as Zenas would find a 49% quarter-to-quarter increase in R&D spending remarkable given the nature of Zenas' business, particularly when Zenas' disclosures *did* make plain to investors that its R&D expenditures had increased between two intervals—2H 2023 and 1H 2024, and 1H 2023 and 1H 2024—at rates *far higher* than they did between Q1 and Q2

2024.  Plaintiff makes no effort to allege how or why a disclosure about a 49% increase in Zenas'

R&D spending between Q1 and Q2 2024 would alter the mix of available information where Zenas

had already disclosed that (i) R&D spending had climbed **89.6%** between 2H 2023 and 1H 2024,

(ii) R&D spending in 1H 2024 had increased by **86.5%** compared to 1H  2023, and (iii) it had

almost matched its FY 2023 R&D expenditures in 1H 2024 ***alone***.  *See supra* at 12–13.  That

pleading failure requires dismissal.  *See, e.g.*, *Angelos*, 494 F. Supp. 3d at 49–51 (omissions

immaterial because they "could not be found to have been material to a reasonable investor in light

of the totality of information disclosed in the Registration Statement").

A case from the Second Circuit Court of Appeals, *Asay v. Pinduoduo Inc.*, 2021 WL

3871269 (2d Cir. Aug. 31, 2021), is squarely on point and illustrates why Plaintiff cannot plead

the materiality of the quarterly figures he complains were not disclosed.  In *Asay*, the plaintiff

brought '33 Act claims against Pinduoduo, a Chinese e-commerce company, based on its alleged

failure to disclose in its pre-IPO materials that its "sales and marketing expenses and net loss had

soared" between Q1 and Q2 2018.  *Id.* at *3.  While Pinduoduo had not broken out those costs, it

had disclosed to investors "financial data" that "an investor could have looked at" to understand

"that over the preceding year, the Company's marketing expenses had grown," overall, "by a

multiplier of sixteen."  *Id.* at *4.  Likewise, Pinduoduo's disclosed data allowed an investor to

"calculate[]" that Pinduoduo's marketing expenses "had already quadrupled in the first quarter of

2018."  *Id.*  And finally, Pinduoduo told investors that it expected its operating expenses to increase

in the future.  *Id.* at *3.  In affirming the District Court's dismissal of the case, the Second Circuit

found the omitted quarter-to-quarter disclosures immaterial: "given the disclosures regarding the

significant increase in marketing costs in prior reporting periods, the doubling of user acquisition

costs in the second quarter of 2018 would not have significantly altered the total mix of

-14-

information." *Id.* at *4.  Here, Zenas disclosed both (i) an **89.6%** increase in R&D spend between 2H 2023 and 1H 2024, and (ii) an **86.5% year-over-year increase** in R&D spend from 1H 2023 to 1H 2024, increases that were both significantly greater than the 49% quarter-to-quarter increase that Plaintiff claims was omitted.  As in *Asay*, additional disclosure of the increase in R&D cash burn between Q1 and Q2 2024 would have added nothing to the mix.

In any event, Plaintiff's lone materiality allegation—that quarterly burn rates were "highly material to investors" given "Zenas [is] a development stage biotechnology company with no revenues," ¶¶ 37, 43—is boilerplate, conclusory, and cannot establish materiality even under Rule 8.  *See Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 402 (S.D.N.Y. 2022) ("[C]onclusory statement that the changes in financial results were material to investors is not sufficient [to plead materiality].").  Plaintiff otherwise provides no support for an inference that the omission of quarterly statistics was material—Plaintiff does not even allege a corrective disclosure that revealed the "truth" about Zenas' R&D spending and caused a stock drop, further emphasizing the immateriality of any purported omission.  *Cf. New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 Fed. Appx. 10, 16 (2d Cir.2011) (allegations of a "precipitous decrease in share price that occurred after [the issuer] disclosed the tru[th]" supported materiality inference).

***Plaintiff Identifies No "Half-Truth"***:  The Amended Complaint also fails to plead that Q1 and Q2 2024 R&D spending had to be disclosed "to make [the Registration Statement's] affirmative statements not misleading." *Cody*, 199 F. Supp. 3d at 420.  Plaintiff does not challenge the accuracy of the significant R&D-related disclosures that Zenas did provide, nor does he make any meaningful effort to plead that those "literally accurate" disclosures were "half truth[s]" that were "in context . . . misleading." *Id.* at 419.

The heart of the Amended Complaint is Plaintiff's claim that, by not disclosing Q1 and Q2

-15-

2024 cash burn, Zenas misled investors into believing that "Zenas was spending less quickly than it actually was." ¶ 43. But, as discussed above, Plaintiff does not challenge Zenas' disclosures that its R&D spending had increased 89.6% between 2H 2023 and 1H 2024, or 86.5% between 1H 2023 and 1H 2024, which conveyed the exact *opposite* message about Zenas' rate of R&D spending. And the Amended Complaint otherwise supplies *no* plausible allegations as to why, in light of those disclosures, the exclusion of quarterly R&D spending figures could have possibly created the misleading impression that Plaintiff claims. The most he musters is the conclusory allegation that the Registration Statement was misleading because investors consider information about burn rate in "early-stage biotechnology issuers" to be "critically important." ¶ 37.

Beyond being unsupported, that allegation fails to plead that the Registration Statement was in any way misleading. In fact, it confirms why Plaintiff fails to state a claim. The '33 Act does not impose "a general disclosure requirement," *Wang Yan v. ReWalk Robotics Ltd.*, 330 F. Supp. 3d 555, 569 (D. Mass. 2018), *aff'd sub nom. Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22 (1st Cir. 2020), and a disclosure is not required "merely because a reasonable investor would very much like to know [a] fact." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010). That investors are purportedly interested in quarterly burn rate—the sole supporting allegation for Plaintiff's claim that Zenas misled investors—does not, without more, require Zenas to further break out the detailed six-month R&D disclosures that it already provided. *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 274 (S.D.N.Y. 2012) ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject" if disclosures "would not be so incomplete as to mislead."). Zenas would only be required to disclose its quarterly burn rate if, "in light of other statements made [in the Registration Statement], [Zenas] had a duty to disclose [quarterly information] so as not to mislead." *Angelos*, 494 F. Supp. 3d at 49–51.

-16-

Plaintiff utterly fails to plead that the Registration Statement was misleading absent quarterly data. Plaintiff identifies no disclosures suggesting, for example, that Zenas' R&D spending had not increased in the lead up to the IPO, or that Zenas was not expending significant resources on its R&D efforts. *See May*, 2025 WL 887300, at \*23 (dismissing '33 Act claims where plaintiff identified "no representation . . . that would have been misleading absent a more complete disclosure"); *cf. St. John v. Cloopen Grp. Holding Ltd.*, 171 N.Y.S.3d 893, at \*6 (Table) (N.Y. Sup. Ct. 2022) (sustaining '33 Act claims based on omission of 33% quarter-to-quarter decrease in customer retention rate where registration statement indicated that the "customer retention rate was stable and at a relatively high level"). Nor could he—such disclosures do not exist.

In fact, the Registration Statement made explicit that Zenas' R&D spending was increasing significantly and would continue to do so. Beyond detailing significant spending increases between 2H 2023/1H 2024 and 1H 2023/1H 2024, the Registration Statement was loaded with other disclosures that conveyed Zenas' rising R&D spend. Notably, the gravamen of Plaintiff's initial complaint—Zenas' cash runway disclosures—actually telegraphed to investors that Zenas had cash runway through Q3 2026 and thus would be spending *on average* up to *$49 million* per quarter over the course of two years, much of which would be R&D spend. *See supra* at 3. Thus, while Plaintiff attempted to exploit those disclosures in his first complaint, he now concedes their accuracy, undermining his new theory about Zenas' near-term burn rate. Zenas also told investors that it would be spending $100 million of the IPO proceeds on obexelimab's development, including continued enrollment in the Phase 3 study of obexelimab in IgG4-RD and the initiation of two global Phase 2 clinical trials in Q3 2024 (the setup of which would plainly require large outlays in Q2 2024), further signaling that Zenas was ramping up its spending. *See supra* at 4–6.

Zenas' disclosures, "taken together and in context," *ProShares*, 728 F.3d at 103, thus

-17-

conveyed the opposite impression from what Plaintiff claims, and one that would be unsurprising to a reasonable biotech investor: that advancement of Zenas' candidates would require large R&D outlays, that those expenditures were rising at the time of the IPO, and that R&D spending would only continue to rise after the IPO's completion. Plaintiff therefore fails to plead that any purported omission of Q1 and Q2 burn rate rendered the Registration Statement misleading. *See Wandel v. Gao*, 590 F. Supp. 3d 630, 645–46 (S.D.N.Y. 2023) (dismissing '33 Act claim where "actual disclosure did not leave investors with [a] misleading impression" about omitted information).

### B.    Plaintiff Fails to Plead an Item 303 Violation

Plaintiff also fails to plead an Item 303 violation. Item 303 requires disclosure of "any known trends or uncertainties that have had or that [the registrant] reasonably [expects will impact financial performance]." *See* 17 C.F.R. § 229.303. Here, Plaintiff claims that the 49% increase in Zenas' R&D expenditures between Q1 and Q2 2024 qualified as a "trend" or "uncertainty" that was not disclosed in violation of Item 303. *See* ¶¶ 49–50. Plaintiff is wrong on several fronts.

***First***, Plaintiff cannot plead that "the offering documents failed to disclose" any Item 303 trend. *Pension Tr.*, 360 F. Supp. 3d at 22–23. A one-quarter increase in R&D expenses from Q1 to Q2 2024, followed by a ***decrease*** in Q3—all that Plaintiff alleges, *see* ¶ 42—is not a "trend" that must be disclosed under Item 303. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,* 202 F. Supp. 2d 8, 13 (S.D.N.Y.2001) (finding that 9% quarter-to-quarter drop in operating income was not a "trend"); *Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 368 (S.D.N.Y. 2019), *aff'd sub nom. Cavalier Fundamental Growth Fund v. Skechers U.S.A., Inc.*, 826 Fed. App'x 111 (Mem) (2d Cir. 2020) ("[A]lleged effects on a single quarter's revenues do not constitute trends under Item 303."). Nevertheless, Zenas fully disclosed, among other things, that its R&D expenses had, at the time of the IPO, risen by 89.6% between 2H 2023 and 1H 2024 and by 86.5% year-over-year, and that it had already nearly matched its full-year 2023

R&D spending in 1H 2024 alone. *See supra* at 12–13. The 49% increase in R&D spend between Q1 and Q2 2024 is fully consistent with Zenas' disclosures, which detailed any "trend" of rising R&D expenses—and indeed, disclosed even larger jumps in R&D spending over multiple periods. *Cf. Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at \*10 (S.D.N.Y. Mar. 30, 2020), *aff'd* 2021 WL 3871269 (2d Cir. Aug. 31, 2021) (where company had disclosed that "over the preceding year, [its] marketing expenses had grown by a multiplier of sixteen," Item 303 did not require disclosure about "[t]he doubling of marketing expenses in the second quarter of 2018," given that it was "consistent with the trend disclosed by the [c]ompany"); *Yan*, 973 F.3d at 33–34 (affirming dismissal of Item 303 claim where the "Registration Statement did not omit [the alleged] risks").

  ***Second***, if Plaintiff contends that Zenas did not disclose the "uncertainty" of rising R&D spending, that is also wrong. *See Tharp v. Acacia Commc'ns, Inc.*, 321 F. Supp. 3d 206, 225 (D. Mass. 2018) (rejecting Item 303 claim where Plaintiff "[did] not allege sufficient facts to show that the offering documents failed to disclose the known uncertaint[ies]"). Zenas told investors that it expected R&D spending to rise going forward and to impact its bottom line. Zenas told investors that: (i) it "expect[ed] to continue to incur significant and increasing losses for the foreseeable future" based in part on "preclinical development and clinical trials" for its products (Ex. 1 at 83); (ii) it "expect[ed] that [its] research and development expenses [would] continue to increase for the foreseeable future" (*id.* at 86); and (iii) it "expect[ed] that [its] research and development . . . costs will increase in connection with [its] planned research and clinical activities," which would cause Zenas to "incur substantial operating losses and negative operating cash flows for the foreseeable future (*id.* at 95). If anything, Zenas told investors that ramping R&D spend was no "uncertain[ty]" at all, and "repeated[ly] warn[ed]" that it was a core feature of Zenas' business as a clinical-stage biotech company whose studies were advancing to later stage, more

expensive phases. *See Asay*, 2020 WL 1530745, at *9–10.[11]

## II.    PLAINTIFF'S SECTION 15 CLAIM MUST BE DISMISSED

Plaintiff's Section 15 claim must also be dismissed.  To plead a Section 15 claim, Plaintiff must plead an underlying violation of the '33 Act.  *See* 15 U.S.C. § 77o(a).  For the reasons discussed above, Plaintiff has failed to plead a Section 11 claim, which requires dismissal of the Section 15 claim.  *See Pension Tr.*, 360 F. Supp. 3d at 31; *Wang Yan*, 330 F. Supp. 3d at 572.

## III.    ANY DISMISSAL SHOULD BE WITH PREJUDICE

Should the Court grant dismissal, Plaintiff should not be permitted leave to amend. Plaintiff has already received one opportunity to amend and, despite being given significant time and an additional extension (ECF Nos. 20–21) to prepare a plausible complaint, he has abandoned his original theory of liability and, in support of his new theory, offered a skeletal pleading that relies on half-baked allegations about Zenas' R&D-related disclosures.  Leave to amend would do nothing to salvage Plaintiff's claims.  *See, e.g.*, *Mahoney*, 342 F. Supp. 3d at 217–18 (Sorokin, J.) (dismissing securities claims with prejudice where there was no indication that plaintiff could "cure deficiencies identified by [the] Defendant," plaintiff "already had substantial time to revise his allegations," and "previously amended his Complaint"); *Cody*, 199 F. Supp. 3d at 421–22 (denying leave to amend '33 Act claims where there was "no basis for concluding that there are allegations available to [plaintiffs] that might cure the pleading defects of the existing Complaint").

<u>CONCLUSION</u>

For the reasons stated herein, this Court should grant Defendants' Motion to Dismiss in its entirety and dismiss the Amended Complaint (ECF No. 22), with prejudice, as to all Defendants.

---

[11] In any event, Item 303 did not require Zenas to disclose "known trends and uncertainties" for all fiscal periods, it only required such disclosure for "the most recent fiscal year-to-date period for which a statement of comprehensive income is provided."  *See* 17 C.F.R § 229.303(c)(2)(i). Zenas fully disclosed any trends and uncertainties for that required period—1H 2024.

Dated:  January 23, 2026                    Respectfully submitted,

/s/ *Peter L. Welsh*

Peter L. Welsh (BBO# 643261)
J. William Piereson (BBO #698636)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
Fax: (617) 951-7050
Peter.Welsh@ropesgray.com
Will.Piereson@ropesgray.com

*Attorneys for Zenas Defendants*

/s/ *Andrew Rhys Davies*

Michael G. Bongiorno (BBO # 558748)
Andrew Rhys Davies (admitted *pro hac vice*)
Brad E. Konstandt (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
Michael.Bongiorno@wilmerhale.com
Andrew.Davies@wilmerhale.com
Brad.Konstandt@wilmerhale.com

Elizabeth E. Driscoll (BBO #705302)
WILMER   CUTLER   PICKERING   HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000
Elizabeth.Driscoll@wilmerhale.com

*Attorneys for Underwriter Defendants*

-21-

## <u>CERTIFICATE OF SERVICE</u>

On January 23, 2026, I, J. William Piereson, caused this document to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties and/or counsel of record.

*/s/ J. William Piereson*
J. William Piereson