**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NOPPHOL BUATHONGSRI, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ZENAS BIOPHARMA, INC. LEON O. MOULDER, JR., JENNIFER FOX, PATRICIA ALLEN, JAMES BOYLAN, PATRICK ENRIGHT, TOMAS KISELAK, HONGBO LU, PH.D, JAKE NUNN, JOHN ORLOFF, M.D., TING XIAO, MORGAN STANLEY & CO. LLC, JEFFERIES LLC, CITIGROUP GLOBAL MARKETS, INC., GUGGENHEIM SECURITIES, LLC,<br><br>    Defendants. | Case No. 1:25-cv-10988<br>Hon. Leo T. Sorokin<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE**
**AMENDED CLASS ACTION COMPLAINT FOR**
<u>**VIOLATION OF THE FEDERAL SECURITIES LAWS**</u>

-i-

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .............................................................................................................................. 1

CONCLUSION ........................................................................................................................... 5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelos v. Tokai Pharma., Inc.*,
  494 F. Supp. 3d 39 (D. Mass. 2020) ................................................................................2, 4

*Asay v. Pinduoduo Inc.*,
  2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) ..................................................................2, 5

*Asay v. Pinduoduo Inc.*,
  2021 WL 3871269 (2d Cir. Aug. 31, 2021) .........................................................................3

*Cody v. Conformis, Inc.*,
  199 F. Supp. 3d 409 (D. Mass. 2016) ..............................................................................1, 4

*In re GigaCloud Tech. Inc. Sec. Litig.*,
  2025 WL 307378 (S.D.N.Y. Jan. 27, 2025) .........................................................................3

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) .................................................................................................3

*Pension Tr. v. J. Jill, Inc.*,
  360 F. Supp. 3d 17 (D. Mass. 2018) .....................................................................................2

*Ramos v. United States Postal Serv.*,
  2024 WL 5009052 (D. Mass. Dec. 6, 2024) .........................................................................3

*Scott v. General Motors Co.*,
  46 F. Supp. 3d 387 (S.D.N.Y. 2014) .....................................................................................2

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996) .................................................................................................5

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
  707 F.3d 95 (1st Cir. 2013) ...................................................................................................5

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
  412 F. Supp. 3d 353 (S.D.N.Y. 2019) ...................................................................................5

**PRELIMINARY STATEMENT**[1]

Plaintiff's Opposition (ECF No. 36) does not rebut a single point in Defendants' motion to dismiss brief (ECF No. 33).  Instead, Plaintiff knocks down strawman versions of Defendants' arguments, mischaracterizes the Registration Statement, tries to plead new facts, and asks the Court to apply made-up standards to his '33 Act claims.  But no matter how much Plaintiff twists Defendants' arguments, Zenas' disclosures, or the basic standards for securities cases, he cannot wring out viable disclosure claims.  Above all, the Opposition *concedes* that Zenas disclosed an *89.6% increase* in its R&D-related cash burn in 1H 2024—a far greater "pace [of cash consumption]" (Opp. at 12) than the 49% quarterly increase that Plaintiff claims Zenas concealed.  Plaintiff cannot explain how that disclosure of semiannual R&D spend—which was consistent with SEC regulations—made the IPO materials misleading at all, much less materially so.  The Opposition therefore confirms that the Amended Complaint should be dismissed with prejudice.

**ARGUMENT**

The Opposition highlights why Plaintiff's '33 Act claims do not "meet the plausibility requirement of Rule 8."  *Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 417-18 (D. Mass. 2016).

***Zenas Disclosed Exactly What Plaintiff Claims Was Omitted***:  Plaintiff attacks an argument that Defendants did not make: that Zenas had no obligation to "disclose quarterly data in the abstract."  Opp. at 1.  That framing is wrong.  Defendants showed that Zenas disclosed "the very information about considerable increases in its R&D-related cash burn that the Amended Complaint posits was withheld."  OB at 11.  Plaintiff does not dispute that, among its extensive pre-IPO disclosures, Zenas disclosed an *89.6% increase* in R&D spend in 1H 2024.  *See* OB at 2-

---

[1] Capitalized terms have the same meaning as in Defendants' motion papers (ECF Nos. 32-33).  Citations to "Opp." refer to the Opposition, and to "OB" refer to Defendants' opening brief.  Unless indicated otherwise, internal quotation marks and citations are omitted and all emphasis is added.

3, 7, 12, 14. Nor does he dispute that those disclosures satisfied SEC regulations. *Id.* at 11.

All Plaintiff musters is the assertion that "aggregate half year and year-over-year figures do not tell investors" Zenas' "current burn rate." Opp. at 12. But, beyond claiming they should have different formatting, Plaintiff offers no coherent reason why exactly those disclosures did not "tell investors [Zenas' burn rate]." In fact, Zenas' disclosures not only made clear "the pace at which Zenas was . . . consuming cash" (*id.*), but also that R&D spending had grown significantly in each of Q1 and Q2. *See Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020) (disclosure that marketing expense had grown "by a multiplier of sixteen" over prior year also showed "average doubling of expenses every quarter"). These disclosures are dispositive. *See Pension Tr. v. J. Jill, Inc.*, 360 F. Supp. 3d 17, 28-30 (D. Mass. 2018) (Sorokin, J.); *Angelos v. Tokai Pharma., Inc.*, 494 F. Supp. 3d 39, 50-54 (D. Mass. 2020).[2] Plaintiff cannot avoid dismissal by quibbling that true, accurate, and SEC-compliant disclosures had to be in a different format. *See Scott v. General Motors Co.*, 46 F. Supp. 3d 387, 397-98 (S.D.N.Y. 2014) (assertion that "GM ought to have expressed its inventory disclosures [using different metric]" did not "state a claim").

The Opposition also does not explain why quarterly metrics would provide additional material information. Plaintiff predictably says that materiality is rarely dispositive on a Rule 12 motion (Opp. at 14-15), but that is irrelevant where, as here, the information purportedly omitted was fully and accurately disclosed. Plaintiff conspicuously avoids addressing why quarterly R&D spending growth was material on top of "the totality of information disclosed" by Zenas, *Angelos*, 494 F. Supp. 3d at 49-50, including an 89.6% increase in 1H 2024. That requires dismissal. *Id.*;

---

[2] Plaintiff halfheartedly tries to distinguish these cases as involving disclosures of "the *precise*" details allegedly omitted. Opp. at 13. That misses the point. Both cases held that disclosures were not misleading because they amply conveyed information about the relevant subject matter, even if they did not do so in the exact manner allegedly required. So too here. Plaintiff fails utterly to explain why Zenas' semiannual disclosures failed to inform investors about Zenas' cash burn.

*see also Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *4 (2d Cir. Aug. 31, 2021) (further marketing expense disclosures would "not have significantly altered 'total mix' of information").[3]

**The Registration Statement Was Not Misleading:** Plaintiff tries to sidestep Zenas' disclosures, arguing that "omitting [] quarter-over-quarter acceleration" hid "decision-useful fact[s]" about Zenas' purported "new baseline" in R&D spend, and that Zenas' presentation of its R&D spend did not align with how biotech investors "assess liquidity and dilution risk." Opp. at 12. For starters, the Amended Complaint alleges nothing about "baseline" R&D spend or how investors "assess liquidity and dilution risk." *See Ramos v. United States Postal Serv.*, 2024 WL 5009052, at *4 (D. Mass. Dec. 6, 2024) ("[I]t is axiomatic that a [p]laintiff may not amend its pleadings in the opposition memorandum."). And, in any case, these new allegations are supported only by Plaintiff's say-so, not well-pled facts.[4] Also, Plaintiff's standard—that Zenas' disclosures were misleading because they allegedly omitted "decision-useful" details—is invented (and fanciful). The Opposition does not cite a single case applying that framework. Nor could it—the cases say the opposite. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) (disclosure not required "merely because a reasonable investor would very much like to know [a] fact"); *In re GigaCloud Tech. Inc. Sec. Litig.*, 2025 WL 307378 at *6 (S.D.N.Y. Jan. 27,

---

[3] While Plaintiff tries to diminish the Second Circuit's *Asay* affirmance (Opp. at 16), Zenas' disclosures were actually *more* thorough than those at issue in that case. Pinduoduo launched its IPO post-Q2 2018 but did not disclose its Q2 marketing spend, thereby allegedly concealing an "unprecedented increase" in those expenses in Q2. 2021 WL 3871269, at *4. But that omission was immaterial given Pinduoduo's disclosure of aggregate growth in marketing spend in the year prior. *Id.* Here, Zenas' disclosures covered the exact period Plaintiff claims was omitted and showed an 89.6% increase in R&D spend in that time—disclosures even more on point than *Asay*.

[4] They also make little sense. For example, Plaintiff's allegation that Zenas had a new spending "baseline" is illogical given Zenas told investors—in a disclosure that Plaintiff does not challenge—that its "net losses" would "fluctuate significantly from period to period" based on the variable timing of its R&D activities, including clinical trials. *See* OB at 6 (citing ECF No. 34-1 at 84). There was thus no static, quarterly "baseline" for Zenas to communicate.

2025) (a "useful" disclosure "is not required simply because it may be relevant or of interest").

In another brand-new allegation, Plaintiff claims that if Zenas disclosed its "true" R&D spend "it would have called into question the feasibility of Zenas' claim to be able to use $100 million in IPO proceeds to complete development of obexelimab," as Zenas "would have spent the $100 million" by Q3 2025. Opp. at 13. But Plaintiff fails to explain how or why quarterly financials would have provided investors with any more information on this point than the disclosed semiannual financials, particularly when Plaintiff claims that R&D spend leveled off in Q3 2024. Plaintiff also misrepresents the Registration Statement. The Registration Statement never suggested that IPO proceeds were obexelimab's **only** source of funding or that those funds would be sufficient to "complete development of obexelimab." On the contrary, the Registration Statement says that Zenas would use $100 million of IPO proceeds (and cash on-hand) "***to advance*** the clinical development of obexelimab," not complete it. ECF No. 34-1 at 10, 75.

All told, Plaintiff's '33 Act claims can survive only if he plausibly alleges facts showing that quarterly R&D spend had to be disclosed "to make [the Registration Statement's] affirmative statements not misleading." *Cody*, 199 F. Supp. 3d at 420; OB at 15-18. But beyond his unsupported new factual assertions about what investors "need to know" (Opp. at 12), he makes no effort to satisfy this standard. He does not (and cannot) point to anything in the Registration Statement that suggested anything different from what Zenas' SEC-compliant, semiannual disclosures fully disclosed: that R&D spend was increasing significantly leading up to the IPO. *See* OB at 15-17. He thus fails to allege plausibly that Zenas' disclosures, "in the context of the totality of the Registration Statement," *Angelos*, 494 F. Supp. 3d at 54, could have generated any misleading impression about "the pace at which Zenas was actually consuming cash." Opp. at 12.

***Intra-Quarter Disclosures Not Required***: Plaintiff also claims that Zenas had to disclose

R&D spend from then in-progress Q3 2024, arguing Zenas' disclosures about 1H 2024 were "stale." Opp. at 12. But as Plaintiff's cases show, intra-quarterly disclosure is only required where undisclosed information indicates an "extreme departure from the range of results which could be anticipated based on currently available information." *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1210-11 (1st Cir. 1996); *accord Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 104 (1st Cir. 2013) (pharmaceutical company should have disclosed "a death, two life-threatening reactions, and fourteen hospitalizations"). As Plaintiff admits, Zenas' Q3 2024 R&D spend was **consistent** with its fully disclosed spending increases through Q2 2024. *See* Opp. at 10. There was thus no "departure"—let alone an "extreme departure"—requiring intra-quarter disclosure.

***No Item 303 Violation***: Nor does the Opposition support Plaintiff's Item 303 theory. *See* Opp. at 8-11. Plaintiff ignores that Item 303 only required disclosure for "the most recent fiscal year-to-date period," *i.e.*, 1H 2024. *See* OB at 20 n.11. And, while Plaintiff claims that Zenas' semiannual disclosures did not disclose the "trend" [5] of rising R&D expense because they show "historical aggregate growth" (Opp. at 10), the district court opinion in *Asay v. Pinduoduo Inc.* illustrates why that is wrong. *See* OB at 19 (citing 2020 WL 1530745, at *10). There, Pinduoduo's disclosure of 16-fold marketing expense growth in the year prior—*i.e.*, a disclosure of "historical aggregate growth"—fully disclosed "the trend of the Company's. . . marketing expenses." *Id.* at *9-10. The same is true of Zenas' disclosures here, which is fatal to Plaintiff's Item 303 allegations.

## CONCLUSION

This Court should grant Defendants' Motion to Dismiss in its entirety and with prejudice.

---

[5] *Shaw* does not suggest that a one-quarter increase in R&D spend is an Item 303 "trend" because *Shaw* addressed intra-quarter disclosures of "extreme departure[s]" from prior results, which is irrelevant here. *See* Opp. at 10; *supra* at 4-5. Plaintiff otherwise ignores *Skechers*' holding: "alleged effects on a single quarter's [results] [are not] 'trends' under Item 303." *Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 368 (S.D.N.Y. 2019).

Dated:  April 23, 2026

Respectfully submitted,

/s/ *Peter L. Welsh*
Peter L. Welsh (BBO# 643261)
J. William Piereson (BBO #698636)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
Fax: (617) 951-7050
Peter.Welsh@ropesgray.com
Will.Piereson@ropesgray.com

*Attorneys for Zenas Defendants*

/s/ *Andrew Rhys Davies*
Michael G. Bongiorno (BBO # 558748)
Andrew Rhys Davies (admitted *pro hac vice*)
Brad E. Konstandt (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
Michael.Bongiorno@wilmerhale.com
Andrew.Davies@wilmerhale.com
Brad.Konstandt@wilmerhale.com

Elizabeth E. Driscoll (BBO #705302)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000
Elizabeth.Driscoll@wilmerhale.com

*Attorneys for Underwriter Defendants*

-6-

## CERTIFICATE OF SERVICE

On April 23, 2026, I, J. William Piereson, caused this document to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties and/or counsel of record.

*/s/ J. William Piereson*
J. William Piereson