UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NOPPHOL BUATHONGSRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 25-10988-LTS |
| | ) | |
| ZENAS BIOPHARMA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON MOTION TO DISMISS (DOC. NO. 32)

June 29, 2026

SOROKIN, J.

This putative securities class action arises out of the registration statement issued in connection with Zenas Biopharma, Inc.'s initial public offering. Defendants moved to dismiss, contending plaintiff Nopphol Buathongsri failed to plead an actionable omission from Zenas's registration statement. Doc. Nos. 32, 33.[1] After careful consideration, the Court agrees with Defendants that Buathongsri has not plausibly identified an unlawful omission. For that reason and as further explained below, the motion to dismiss is ALLOWED.

I.    FACTS[2]

Zenas Biopharma is a "clinical-stage biopharmaceutical company developing immunology-based therapies for patients with autoimmune diseases." Doc. No. 22 ¶ 38. Its lead potential candidate is obexelimab, a monoclonal antibody. Id.

---

[1] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or, for documents enumerated by paragraph, to paragraph numbers.

[2] The Court draws the following facts from the amended complaint, Doc. No. 22, accepting all well-pleaded facts and drawing all reasonable inferences in Buathongsri's favor, as it must on a

Zenas held its initial public offering ("IPO") on September 13, 2024. Id. ¶ 2. Zenas's

registration statement, filed in connection with its IPO, became effective on September 12, 2024.

Id. ¶ 51; see also Doc. No. 34-4 (Zenas's registration statement).[3]

Zenas's IPO offer price was $17.00 per share. Doc. No. 22 ¶ 2. Buathongsri purchased

Zenas stock in November 2024 at prices ranging from $11.15 per share to $11.65 per share.

Doc. No. 1-3. When this suit was filed in April 2025, Zenas was trading at $8.33 per share.

Doc. No. 22 ¶ 3.

As of its IPO, Zenas was pursuing obexelimab clinical trials for four conditions. One

condition (immunoglobulin G4-related disease or "IgG4-RD") was enrolling patients in a Phase

3 trial, and the others (multiple sclerosis or "MS," systemic lupus erythematosus or "SLE," and

warm autoimmune hemolytic anemia or "wAIHA") were enrolling or in-progress in Phase 2. Id.

¶¶ 2, 38–39. Zenas's registration statement depicted its development pipeline for these four

clinical trials. Id. ¶ 39; Doc. No. 34-1 at 6. It explained that, in addition to the ongoing Phase 3

trial for IgG4-RD, the Phase 2 trials for MS and SLE were initiated in the third quarter of 2024,

while the Phase 2/3 trial for wAIHA began in late 2023 and would produce initial data in the

fourth quarter of 2024. Doc. No. 34-1 at 7–10.

---

motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court also considers "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice," including "matters of public record," and "(c) concessions in a plaintiff's response to the motion to dismiss." Newman v. Krintzman, 723 F.3d 308, 309 (1st Cir. 2013) (citation modified).

[3] The amended complaint quotes extensively from Zenas's registration statement (Form S-1/A), see generally Doc. No. 22, and no party disputes the document's authenticity. The Court may rely on the registration statement in resolving the motion to dismiss. See Pension Tr. v. J.Jill, Inc., 360 F. Supp. 3d 17, 22 & n.1 (D. Mass. 2018); see also Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

The registration statement disclosed that Zenas intended to use IPO proceeds, along with its existing cash, as follows: (1) "approximately $100.0 million to advance the clinical development of obexelimab, including to complete the Phase 3 trial for patients with IgG4-RD[] [and] the Phase 2 trial[s] for patients with" MS, SLE, and wAIHA, and (2) "the remainder to prepare for the obexelimab commercial launch in the U.S. and Europe, if approved." Id. at 14, 79; Doc. No. 22 ¶ 40.  The registration statement explained that research and development ("R&D") expenses "account for a significant portion of [Zenas's] operating expenses" and are largely driven by obexelimab development; it noted Zenas expenses R&D costs "as incurred." Doc. No. 34-1 at 89.  It also emphasized that, "[e]ven if this offering is successful, [Zenas] will require substantial additional financing to achieve [its] goals." Id. at 19 (emphasis omitted).

Zenas's registration statement became effective on September 12, 2024—that is, before the third quarter ended on September 30, 2024.  The registration statement provided financial data in semiannual and annual increments; it did not include quarterly data, and it did not include financial data for the in-progress third quarter.  Central to this case are Zenas's disclosures of its R&D spending and cash flow.

Zenas's registration statement disclosed it spent $56,452,000 on R&D during the first half of 2024 ("H1 2024"), with $35,082,000 attributed to obexelimab development.  Doc. No. 22 ¶ 40.  It also disclosed total operating expenses of $67,280,000 during H1 2024.  Id.  Zenas's registration statement included comparable figures for the first half of 2023 as well as for the full years of 2022 and 2023.  The data show, for instance, that Zenas's R&D spending in H1 2024 was a nearly 90% increase over the prior six months ("H2 2023") and more than 85% year-over-year increase (i.e., over "H1 2023").  The table below summarizes pertinent data presented in the registration statement.  Doc. No. 22 ¶¶ 42, 55, 57, 59; Doc. No. 34-4 at 16, 93, 95, 97, 222, 255.

3

|  | Year ending | | Six months ending | |
|---|---|---|---|---|
|  | Dec. 31, 2022 | Dec. 31, 2023 | June 30, 2023 | June 30, 2024 |
|  | FY 2022 | FY 2023 | H1 2023 | H1 2024 |
| Total R&D Spend | $61,689,000 | $60,033,000 | $30,262,000 | $56,452,000 |
| R&D— Obexelimab | $24,562,000 | $25,446,000 | $12,937,000 | $35,082,000 |
| Total Operating Expenses | $76,199,000 | $87,147,000 | $47,991,000 | $67,280,000 |
| Cash Flows from Operating Activities | ($65,652,000) | ($30,529,000) | ($46,975,000) | ($50,061,000) |

Zenas's registration statement did not break down its R&D spending or other financials by quarter. The amended complaint alleges Zenas's quarterly financials.[4] Doc. No. 22 ¶ 42. Of the $56,452,000 Zenas spent on R&D during H1 2024, it spent $22,645,000 in the first quarter ("Q1 2024") and $33,807,000 in the second quarter ("Q2 2024"), meaning "an increase of 49% quarter over quarter" in R&D spending. Id. In the third quarter ("Q3 2024")—which was in progress when Zenas went public—Zenas spent $33,530,000 on R&D, of which obexelimab development consumed $21,326,000. Id. (The amended complaint does not allege Zenas's spending as of the registration-statement effective date, September 12, 2024.)

|  | Q1 2024 | Q2 2024 | Q3 2024 |
|---|---|---|---|
| Total R&D Spend | $22,645,000 | $33,807,000 | $33,530,000 |
| R&D— Obexelimab | $12,295,000 | $22,788,000 | $21,326,000 |
| Cash Flows from Operating Activities | ($19,102,000) | ($30,959,000) | ($31,059,000) |

---

[4] The amended complaint also includes financial data for the fourth quarter ("Q4 2024"), a period fully postdating the September 13 IPO. Doc. No. 22 ¶ 42. Neither party asserts any claim or makes any argument relying on the Q4 financial data, nor suggesting that Zenas's management should have disclosed what Q4 2024 spending and loss would be.

Buathongsri alleges that Zenas did not disclose that "spending was not uniform across the first six months of 2024." Id. ¶ 42. Zenas's registration statement does, however, qualitatively explain that its spending and losses were largely driven by its ongoing R&D activities, that they fluctuated over time, and that they were continuing to increase. Zenas stated that its "net losses may fluctuate significantly from period to period, depending on the timing of [its] planned clinical studies and expenditures related to [its] research and development activities." Doc. No. 34-1 at 88. The registration statement also repeatedly noted its ongoing and expected substantial losses. The first "risk factor" identified in Zenas's "risk factors summary" is: "We are a clinical-stage biopharma company with a limited operating history and no products approved for commercial sale; we have incurred substantial losses since our inception, and we anticipate incurring substantial and increasing losses for the foreseeable future . . . ." Id. at 11; see also id. at 18 ("We expect to incur significant losses for the foreseeable future, and we expect these losses to increase as we advance the development of our product candidates."); id. at 19 (similar). Zenas's management's discussion explained:

> We have incurred significant operating losses and negative cash flows since inception. Our ability to generate product revenue sufficient to achieve profitability will depend heavily on the successful development and eventual commercialization of one or more of our product candidates. Our net losses for the six months ended June 30, 2024 and 2023 were $65.8 million and $48.1 million, respectively. . . . We expect to continue to incur significant and increasing losses for the foreseeable future. We expect that our expenses and capital requirements will increase substantially in connection with our ongoing activities, particularly if and as we . . . continue clinical development of obexelimab and our other programs[] [and] advance our obexelimab program and our other product candidates through preclinical development and clinical trials . . . .

Id. at 87 (emphasis added). Zenas reiterated elsewhere that it expected its R&D spending to continue to increase for the foreseeable future. See id. at 90 ("We expect that our research and development expenses will continue to increase for the foreseeable future as we advance clinical trials for our product candidates, pursue additional indications, continue to develop additional

5

product candidates, expand our headcount and maintain, expand and enforce our intellectual property portfolio." (emphasis added)); id. at 99 ("We expect to incur significant expenses and operating losses for the foreseeable future as we advance our product candidates through clinical development . . . . We expect that our research and development . . . costs will increase in connection with our planned research and clinical activities." (emphasis added)).

Buathongsri alleges that the registration statement failed to disclose that Zenas's "R&D expenses" and "cash burn" had (1) "materially increased between the first and second quarter of 2024" and (2) "remained at a higher rate during the already in progress third quarter."  Id. ¶¶ 55–60.  He contends that Zenas's failure to "separately disclose its first and second quarter expenses and cash burn rate . . . materially misled investors into believing Zenas was spending less quickly than it actually was."  Id. ¶ 43.

Buathongsri brings this suit on behalf of "all those who purchased Zenas BioPharma common stock on or before March 12, 2025, pursuant and/or traceable to the Registration Statement."  Id. ¶ 65.  He brings two claims under Sections 11 and 15 of the Securities Act of 1933.[5]  Id. ¶¶ 71–84 (citing 15 U.S.C. §§ 77k, 77o).

The amended complaint groups the defendants into three buckets.  First is Zenas itself.  Id. ¶ 11.  Second are the "Individual Defendants," ten Zenas directors who "signed or authorized the signing of" Zenas's registration statement.[6]  Id. ¶¶ 13–23.  Third are the "Underwriter

---

[5] Buathongsri's amended complaint contains a few stray references to Section 12 of the Securities Act, Doc. No. 22 ¶¶ 6, 83, but he does not plead a Section 12 claim.  The amended complaint also briefly refers to "significant problems in [Company's] base business, as well as the likely material effects it would have on the Company's ADS price," id. ¶ 63—but it does not develop these factual allegations, which appear to have been included erroneously.

[6] Specifically, the Individual Defendants are Leon O. Moulder, Jr., Zenas's CEO and chairman of the board; Jennifer Fox, Zenas's Chief Business Officer and Chief Financial Officer; and directors Patricia Allen, James Boylan, Patrick Enright, Tomas Kiselak, Hongbo Lu, Jake Nunn,

Defendants"—Morgan Stanley & Co. LLC, Jefferies LLC, Citigroup Global Markets, Inc., and Guggenheim Securities, LLC—firms that "acted as . . . representative underwriter[s] of [Zenas's] IPO, helping to draft and disseminate the IPO documents." Id. ¶¶ 25–29.

All defendants filed a joint motion to dismiss for failure to state a claim. Doc. No. 32. That motion is fully briefed. Doc. Nos. 33, 36, 38. The Court heard oral argument on June 18, 2026, and it now resolves the motion to dismiss.

II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

As relevant here, Section 11 of the Securities Act of 1933 imposes liability if "any part of the registration statement, when such part became effective, . . . omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). "An issuer may be liable under the 'omissions clause' only where 'an issuer's failure to include a material fact has rendered a published statement misleading.'" Yan v. ReWalk Robotics Ltd., 973 F.3d 22, 31 (1st Cir. 2020) (quoting Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175, 194 (2015)). "Regulation S-K also creates a duty to disclose information in certain situations." Id. Section 11 imposes strict liability on

---

John Orloff, and Ting Xiao. Doc. No. 22 ¶¶ 13–23. Counsel for Zenas also represents the Individual Defendants. See, e.g., Doc. No. 32 at 1 n.1.

issuers and signatories and negligence liability on underwriters.  Silverstrand Invs. v. AMAG Pharms., Inc., 707 F.3d 95, 102 (1st Cir. 2013).

III.  DISCUSSION

Buathongsri's amended complaint fails for the simple reason that he has not alleged an actionable omission.  Zenas disclosed the material risks and trends it was required to disclose, and the omissions Buathongsri identifies did not plausibly render the registration statement misleading.  Under the circumstances—and given all the other information disclosed in the registration statement—neither a quarterly breakdown of Zenas's financials nor its in-progress Q3 2024 data was required to be disclosed.

A.  Section 11

Section 11 claims often present two central issues: "(1) the existence of either a misstatement or an unlawful omission; and (2) materiality."  Pension Tr., 360 F. Supp. 3d at 22 (quoting In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359–60 (2d Cir. 2010)).  Buathongsri alleges two sets of material facts were unlawfully omitted from the registration statement: (1) disaggregated R&D and burn rate for Q1 and Q2 2023 and (2) the same data for the in-progress Q3 2024.  He argues that these omissions rendered Zenas's registration statement misleading and that they represented a "known trend" required to be disclosed by SEC Regulation S-K.  The Court takes each argument in turn.[7]

---

[7] Defendants argue, in part, that they disclosed Q1 financials in earlier draft registration statements submitted to the SEC, and that Q1 and Q2 data were therefore available to (or calculable by) investors at the time of the IPO.  Doc. No. 33 at 9.  The Court does not rely on the draft registration statement because Section 11 liability attaches when a "part of the registration statement . . . became effective."  15 U.S.C. § 77k(a).

### 1. *Duty to Avoid Misleading Statements*

Buathongsri does not dispute that Zenas's disclosed financials were literally accurate. Nor does he point to any statutory or regulatory provision specifically requiring that Zenas disclose quarterly or in-progress (rather than completed year-to-date) financial data.

Buathongsri's Section 11 claim must therefore proceed on a narrower path: that the omission of quarterly (as opposed to semiannual) R&D spending and burn rate, and the in-progress third-quarter financials, rendered the registration statement misleading. Yan, 973 F.3d at 31–32; see also Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 175 (1st Cir. 1994) (explaining that "the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers" (citation modified)); In re ProShares Tr. Sec. Litig., 728 F.3d 96, 101 (2d Cir. 2013) (noting materiality of omitted fact is distinct from omission's unlawfulness). Even assuming these facts were material,[8] Buathongsri has not plausibly alleged that their omission made the registration statement misleading.

The amended complaint alleges that, "[b]y failing to separately disclose its first and second quarter expenses and cash burn rate, Defendants materially misled investors into believing that Zenas was spending less quickly than it actually was." Doc. No. 22 ¶ 43. This conclusory allegation is belied by the registration statement itself. Zenas disclosed, accurately,

---

[8] The parties dispute whether the quarterly R&D and burn-rate data were material. Doc. No. 33 at 17–19; Doc. No. 36 at 18–21. "The mere fact that an investor might find information interesting or desirable is not sufficient to satisfy the materiality requirement." Lucia, 36 F.3d at 175 (citation modified). "Rather, information is 'material' only if its disclosure would alter the 'total mix' of facts available to the investor and if there is a substantial likelihood that a reasonable shareholder would consider it important to the investment decision." Id. (citation modified). Materiality typically is a question for the jury. Id. at 176. The Court need not resolve whether the omitted facts were material because it concludes Buathongsri has not plausibly alleged that their omission was unlawful. See In re ProShares, 728 F.3d at 101.

9

that it spent more than $56 million in R&D in H1 2024, an amount nearly double what it had spent in H2 2023. It told investors, repeatedly, that it had multiple clinical trials ongoing (including two Phase 2 trials it initiated in Q3 2024), that its operating expenses were driven by its R&D activity, and that its R&D spending and losses would remain high and increasing for the foreseeable future. Buathongsri's allegation that investors were misled into believing that "Zenas was spending less quickly than it actually was" depends on the assumption that a reasonable investor—upon reading that Zenas spent $56 million on R&D in H1 2024 (nearly twice as much as it had spent in the prior six months) and had initiated two clinical trials in Q3 2024—would have inferred that Zenas's spending had peaked in early 2024 and declined in the third quarter. That is an unreasonable inference. It ignores the disclosures that (1) R&D spending has increased substantially in the first half of the year, (2) spending fluctuated with R&D activity and that Zenas had initiated two Phase 2 trials (in addition to other ongoing trials) in Q3 2024, and (3) Zenas's spending and losses were high and expected to increase—as well as the absence of any disclosures stating or implying that spending had peaked, or slowed, or decreased. The Court need not credit such an unreasonable (and unsupported) inference.

Buathongsri advances slightly different arguments in his briefing. He first contends that Zenas failed to disclose that, "at the time of the IPO, Zenas had already moved to a sharply higher quarterly spending level that had persisted for more than a single quarter" and was not a "temporary spike in spending." Doc. No. 36 at 16. He says that "nothing [in the registration statement] put [investors] on notice that . . . further spending increases had already occurred beyond the ones Defendants had disclosed." Id. at 16–17. But Zenas's registration statement cannot reasonably be read to suggest that Zenas had experienced a mere "temporary spike in spending." The registration statement disclosed, repeatedly, that Zenas's spending was driven by

10

its R&D activity, that it had initiated two clinical trials in Q3 2024 on top of the multiple

ongoing trials, and that its R&D spending (and corresponding losses) were both high and

increasing.  Those qualitative disclosures align with the nature of the company—a clinical-stage

biopharmaceutical company—its quantitative financial disclosures, and the facts on the ground.

Relatedly, Buathongsri argues that, if Defendants had "disclosed the true rate of spending

on obexelimab R&D, it would have called into question the feasibility of Zenas'[s] claim to be

able to use $100 million in IPO proceeds to complete development of obexelimab."  Doc. No. 36

at 17.  Zenas stated that it intended to use $100 million of the IPO proceeds (and existing cash) to

"advance the clinical development of obexelimab," including completing the ongoing trials.

Doc. No. 34-1 at 14, 79 (emphasis added).  It nowhere said it would be able to complete

development of obexelimab.  And it specifically cautioned investors:

> These estimates, including our expectation regarding the sufficiency of the net
> proceeds from this offering to advance the clinical development of obexelimab for
> IgG4-RD, MS, SLE and wAIHA, are based on assumptions that may prove to be
> wrong, and we could exhaust our available capital resources sooner than we expect.
> We do not anticipate that the expected net proceeds from this offering, together
> with our existing cash, will be sufficient for us to fund all of our product candidates
> through regulatory approval, and we will need to raise substantial additional capital
> to complete the development and commercialization of our product candidates.

Id. at 79 (emphasis added).  Disaggregation of quarterly data, and disclosure of in-progress

quarter spending, were not required to make the registration statement not misleading.

Finally, Buathongsri also argues that additional disclosures were required because

"[i]nvestors in a clinical-stage biotech do not assess liquidity and dilution risk by looking only at

backward-looking combined totals; they need to know whether spending has stepped up to a new

baseline that will govern cash needs going forward."  Doc. No. 36 at 16.  He claims that the

disclosed H1 2024 financials were "already stale."  Id.  But if the H1 2024 financials were stale,

so too were the Q1 and Q2 financials.  Buathongsri's argument thus focuses on the in-progress

Q3 2024 data.  Embracing this argument would effectively impose an across-the-board

requirement that all "clinical-stage biotech" firms must disclose in-progress quarterly burn-rate

data.  Buathongsri cites no authority creating such an affirmative requirement, and the Court

declines to impose such a bright-line rule here.  In any event, given the quantitative and

qualitative disclosures of Zenas's R&D activity and associated risks and losses, the H1 2024

disclosures were not "stale."

In short, Buathongsri has not plausibly alleged that Zenas's failure to break down its

financials by quarter or to report its in-progress quarterly financials rendered the registration

statement misleading.  He therefore has not stated a Section 11 "omission" claim.

2.    *Item 303 Disclosure Obligations*

Buathongsri also argues that Zenas was obligated to disclose its increased R&D spending

and burn rate as a "known trend" under Item 303 of SEC Regulation S-K.[9]  Doc. No. 22 ¶¶ 46–

50, 62; Doc. No. 36 at 12–15.

Item 303 requires disclosure of "any known trends or uncertainties that have had or that

the registrant reasonably expects will have a material favorable or unfavorable impact on net

sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(a)(2)(ii).  "[A]n

actionable § 11 omission may arise when a registration statement fails to comply with Item

303 . . . of SEC Regulation S-K."  Silverstrand Invs., 707 F.3d at 102.  To survive a motion to

---

[9] Buathongsri also alludes to Item 105 of Regulation S-K—Doc. No. 22 ¶ 44, Doc. No. 36 at 9, 11—but he develops no argument that Zenas's registration statement failed to disclose or discuss the "material factors that make an investment in [Zenas] speculative or risky," 17 C.F.R. § 229.105(a); see also Silverstrand Invs., 707 F.3d at 103 ("[T]o withstand dismissal at the pleading stage, a complaint alleging omissions of Item [105] risks needs to allege sufficient facts to infer that a registrant knew, as of the time of an offering, that (1) a risk factor existed; (2) the risk factor could adversely [a]ffect the registrant's present or future business expectations; and (3) the offering documents failed to disclose the risk factor.").  To the extent Buathongsri alleges that Zenas's increased R&D spending and burn rate were "risk factors" within the meaning of Item 105, those factors were adequately disclosed for the reasons stated herein.

dismiss on a failure-to-disclose theory, "a complaint must allege (1) that a registrant knew about an uncertainty [or trend] before an offering; (2) that the known uncertainty [or trend] is reasonably likely to have material effects on the registrant's financial condition or results of operation; and (3) that the offering documents failed to disclose the known uncertainty [or trend]." Id. at 103 (citation modified).

Buathongsri's claim fails because Zenas's registration statement did not fail to disclose a known trend or uncertainty. Even assuming Zenas's increased R&D spending and corresponding burn rate between Q1 2024 and Q2 2024 (followed by a leveling-off in the in-progress Q3 2024) was a "trend" within the meaning of Item 303, Zenas's registration statement adequately disclosed it. The registration statement showed that Zenas spent $56,452,000 in R&D in H1 2024—almost as much as it had spent in total in FY 2023, a nearly 90% increase over the prior six months (i.e., over H2 2023), and a more than 85% year-over-year increase (i.e., over H1 2023). The approximately 50% increase in R&D spending between Q1 and Q2 of 2024 is fully consistent with these disclosed financial data. Cf. Shaw v. Digit. Equip. Corp., 82 F.3d 1194, 1211 (1st Cir. 1996) (plaintiff adequately pled unlawful omission when quarter-to-date performance was "an extreme departure from publicly known trends and uncertainties").

That is not to say that showing aggregate data is always or necessarily sufficient, if aggregation masks a trend that substantially deviates from the public picture of the firm. See id. But here, the rate of increase between quarters simply reinforces the otherwise-known information. Indeed, among the ways R&D spend could double from one six-month period to the next, a fifty-percent increase from quarter to quarter is something like a straight line. The quantitative trend was also aligned with the qualitative disclosures: about the nature and timing of Zenas's R&D efforts, its ongoing and anticipated increased spending and loss, and so on.

Although Buathongsri argues that "the omitted Q2/Q3 data here did not simply repeat a trend already revealed by the disclosed figures," Doc. No. 36 at 15, viewed holistically, that is exactly what it does. The registration statement disclosed that the heightened R&D spending in H1 2024 was no blip.[10] It repeatedly stated, both in its disclosure of risk factors and in management's discussion and analysis, that Zenas's R&D spending (and its losses) were and were expected to remain both high and increasing for the foreseeable future. Doc. No. 34-1 at 11, 18, 87, 90, 99. And an "issuer engaging in a public offering is [not] obligated to disclose interim operating results for the quarter in progress"—here, Q3 2024—"whenever it perceives a possibility that the quarter's results may disappoint the market." Shaw, 82 F.3d at 1210. The disclosed financial data, coupled with qualitative disclosures regarding Zenas's high and increasing R&D spending and losses, adequately conveyed the trend Buathongsri alleges was omitted: that Zenas's R&D spending had increased substantially and that this increase continued into the in-progress third quarter when the registration statement became effective.

Buathongsri has therefore failed to state an Item 303 violation.

B.     Section 15

Section 15 imposes coextensive liability on controlling persons. 15 U.S.C. § 77o(a). Without pleading an underlying Section 11 violation—and none is pleaded here—there is no liability under Section 15. Cooperman v. Individual, Inc., 171 F.3d 43, 52 (1st Cir. 1999) ("A necessary element of a § 15 claim is a primary violation of § 11."). "Because [Buathongsri has] failed to state a claim for such a primary violation, [he has] also failed to state a claim under" Section 15. Id.

---

[10] Buathongsri does not allege that the registration statement was misleading because it overstated Zenas's R&D spending (i.e., by not disclosing that R&D spending had leveled off in Q3 2024 after a major increase in H1 2024).

IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. No. 32) is ALLOWED, and the amended complaint (Doc. No. 22) is DISMISSED WITH PREJUDICE.

Buathongsri has already amended his complaint once.  He has never sought leave to further amend, nor identified any additional or different allegations that might remedy the fatal defects in his complaint.  Accordingly, the Clerk shall enter judgment in favor of Defendants and against Buathongsri on all claims, pursuant to this Order, each side to bear its own fees and costs.

SO ORDERED.

  /s/ Leo T. Sorokin
United States District Judge

15